SEIBEL, *Appellant*, v. SIEMON.

**Measure of Damages**: MECHANICS LIEN: DEED OF TRUST. In the absence of fraud, malice or oppression, the measure of damages for refusal of a purchaser under a deed of trust to permit a purchaser at mechanics lien sale to remove a building erected after the execution of the deed of trust, (as permitted by section 3 of the mechanics lien law, Wag. Stat., p. 908,) is not the value of the building as it stands, but what it would be worth removed from the land.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Kehr & Tittman* for appellant.

The value of the ice-house as a building on the premises, is the measure of damages. *Raymond v. Ewing*, 26 Ill. 329; *North Presbt. Church v. Jevne*, 32 Ill. 214; *Croskey v. North W. M. Co.*, 48 Ill. 481; *Dingledine v. Hershman*, 53 Ill. 280; *Howett v. Selby*, 54 Ill. 151; *Whittenack v. Noe*, 11 N. J. Eq. (3 Stockton) 321; *Newark L. & C. Co. v. Morrison*, 13 N. J. Eq. (2 Beasley) 133; *Whitehead v. First M. P. Church*, 2 McCarter (15 N. J. Eq.) 135; *Smith v. Phelps*, 63 Mo. 585; *Russell v. Defrance*, 39 Mo. 506, 512; Phillips on Mechanic's Liens, 344; *Taber v. Jenny*, 1 Sprague 315; *Hilborne v. Browne*, 12 Me. 162; *Priestley v. Johnson*, 67 Mo. 632; *Soulard v. St. Louis*, 36 Mo. 546.

The mechanic's lien is a statutory right of modern origin and peculiar to this country. It was intended to develop a new country by encouraging the erection of buildings and protecting those whose labor and materials were put into them. If the erection of buildings is to be fostered, and the claims of those whose labor and materials are incorporated in them, are to be secured, it follows that the building once erected must be maintained, and any construction of law which pre-supposes the destruction of the building contravenes the spirit of the statute.

The statute should be fairly construed so as to advance the remedy. *Oster v. Rabeneau*, 46 Mo. 595; *Putnam v. Ross*, 46 Mo. 337; *Buchanan v. Smith*, 43 Miss. 90. Is it to be supposed that the law-makers intended, in a case like the present, to limit the lienor's recovery under a statute designed to protect him, to a pittance not exceeding on an average ten per cent of the value of the building which he erects?

Defendant is a wrongdoer. He should not be permitted to profit by his own wrong, as he will if he gets this building at what it is worth as old lumber. *Rice v. Hollenbeck*, 19 Barb. 664; *Walther v. Wetmore*, 1 E. D. Smith

(N. Y.) 7. Cases such as *Dame v. Dame*, 38 N. H. 431; *Osgood v. Howard*, 6 Me. 452; *Russell v. Richards*, 10 Me. 429; *Tapley v. Smith*, 18 Me. 12; *Smith v. Benson*, 1 Hill 176, are very numerous, in which it is held that if the owner of land resists the removal of a building, which another has the right to remove, he will be liable in trover for the value of it. How that value is to be estimated, does not appear in express terms; but as the party in the wrong is liable for the value of the building, the inference is that it is the value of the building standing, on the ground, and not simply the value of the materials in it. If the latter were the view, it would be so stated, inasmuch as a building and the materials in it are two very distinct things.

A building consists of the materials which enter into it and of the labor which incorporates them in the structure. The labor generally represents the greater portion of the cost. To arrive at the value of a building, therefore, both the labor and the materials must be estimated. Where the owner is to be compensated for a building, both the labor and the materials must be paid for. To pay for the one and exclude the other is not compensation, but a denial of it.

*Broadhead, Slayback & Haeussler* for respondent.

The court having found that there was no malice or willfulness on respondent's part in the refusal to let the appellant remove the materials, the allowance of damages can be on the theory of compensation only. *Franz v. Hitterbrand*, 45 Mo. 121; *Walker v. Borland*, 21 Mo. 289, 293; *Robison v. Rupert*, 23 Pa. St. 524; *Perkins v. Hackleman*, 26 Miss. 41. The damages are not measured by the benefit derived by the respondent for the alleged conversion—it may have been worthless to him, (as was the fact,) in which case the appellant would find his recovery to be nothing, if that criterion was to govern—neither by the cost of the

building, for its value may have appreciated or depreciated since it was put up. If appellant got any title whatever to anything by his purchase at sheriff's sale, it was the right, (Wag. Stat., § 3, p. 906,) where the execution debtor has no longer any interest in the land, " to have such building, erection or improvement sold under execution, and the purchaser thereof may remove the same within a reasonable time thereafter." He, therefore, is not entitled to the actual value of the building as it stands, for the simple reason that he is not entitled to the building as it stands. The true measure is the market value of the materials, subject to statutory restriction of removal within a reasonable time—not what the first cost had been—nor what they were worth subject to different conditions, but what was the market value of the materials with the obligation or incumbrance of removal as the statute required. *Waters v. Stevenson*, 13 Nev. 157 ; Sedgwick Meas. Dam., 472, 488 ; 2 Greenleaf Ev., § 253 ; *Delegal v. Naylor*, 7 Bing. 460 ; *State to use, etc., v. Smith*, 31 Mo. 566 ; *Conard v. Pacific Ins. Co.*, 6 Pet. 268 ; *Spencer v. Vance*, 57 Mo. 430 ; *Powell v. McAshan*, 28 Mo. 70 ; *Goodman v. H. & St. Jo. R. R. Co.*, 45 Mo. 33 : *Ombony v. Jones*, 19 N. Y. 234 ; *Myers v. Burns*, 33 Barb. 401 ; *King v. Wilcomb*, 7 Barb. 263 ; *Dubois v. Kelly*, 10 Barb. 496 ; Field on Damages, § 734.

HENRY, J.—One Eckerle was the owner in fee of a block of ground in St. Louis, and on the 16th day of November, 1863, conveyed it in trust to secure certain notes described in the trust deed, and afterward erected a brewery upon said lot, and, in 1870, the ice-house in controversy in this suit. The mechanics who erected the ice-house filed liens upon it in January, 1871, and in February, 1871, suits were instituted on said liens, and prosecuted to judgment rendered in May, 1871. Executions were issued on said judgment, under which Seibel purchased the ice-house. Prior to the sale under the said execution, in May, 1871, Siemon had purchased the entire property at a sale under

31—72

the deed of trust, and taken possession of the property. Seibel, after he purchased the ice-house, and within the time prescribed by the statute, demanded of Siemon permission to enter and remove it, which the latter refused, denying Seibel's right to the ice-house, and alleging that its removal, on account of its peculiar construction over a large deep vault, would greatly injure his premises, and, as a compromise, offering to pay him the fair and reasonable value of the materials of which it was constructed, less the cost of its removal. The building was one which could be removed only by piece-meal. Seibel rejected Siemon's proposition, and commenced this suit to recover damages. The circuit court allowed plaintiff to recover the value of the house as it stood on the ground, $2,800. The court of appeals reversed the judgment, holding that he was entitled to recover only what it would be worth removed, and the evidence on that point was, that it was worth about $820. From the judgment of the court of appeals plaintiff has appealed to this court.

Under the third section of the act in relation to mechanics' liens, a lien for work and materials attaches to the building against a prior deed of trust, and the person enforcing it may have the building sold under execution, and the purchaser may remove it within a reasonable time. Wag. Stat., 908. The mechanic or material man acquires no lien upon the land, and substantially, the only right acquired by the purchaser, is the right to remove the building within a reasonable time. The purchaser under the deed of trust acquires the title to both the land and the building, subject only to the right of the purchaser of the building under the judgment for the mechanic's lien, to remove it.

For the wrong done such purchaser by a refusal to permit him to exercise his right of removal, what is the measure of damages? Prof. Greenleaf, in his work on evidence, says: "Damages are given as a compensation, recompense or satisfaction to the plaintiff, for an injury

actually received by him from the defendant; they should be precisely commensurate with the injury, neither more nor less; and this whether it be to his person or estate." § 253. "All damages must be the result of the injury complained of, whether it consists in the withholding of a legal right, or the breach of a duty legally due to the plaintiff." § 254. There is a controversy on this subject between this author and Mr. Sedgwick, the latter insisting that the doctrine announced by Prof. Greenleaf is incorrect, and contending for the broader doctrine that: "Wherever the elements of fraud, malice, gross negligence or oppression, mingle in the controversy, the law, instead of adhering to the system, or even the language of compensation, adopts a wholly different rule. It permits the jury to give what it terms punitory, vindictive or exemplary damages" Sedgwick on Damages, 39. They are agreed, however, that in the absence of the elements of fraud, malice, etc., compensation commensurate with the injury is what the complaining party is entitled to. None of these elements appear in this case. The circuit court found none, nor do we think that the evidence would have justified a finding that defendant was actuated by any other motive than a desire to prevent serious injury to his property.

In *Spencer v. Vance*, 57 Mo. 428, this court declared, that "the rule of damages for the wrongful taking of goods, is the market value at the time, and not the price paid for them, or at which they were sold." If A. converts to his own use B.'s horse, worth but $150 in the market, that amount, with smart money if the elements exists in the case which authorize a recovery of smart money, would be the measure of A.'s damages, although the horse should be of double that value to B. In *Baldwin v. Porter*, 12 Conn. 483, the court observed: "That the value of the property converted is the general rule of damages in an action of trover, is admitted. To this rule there are exceptions, and both the rule and exceptions proceed upon the principle that the plaintiff ought to recover as much,

and no more, damages than he has actually sustained, which commonly is the value of the property, and hence the general rule. No good reason consistently with moral principle can be suggested why greater damages should ever be recovered than have in truth been sustained, except in those cases where the law permits, by way of punitive justice, the recovery of vindictive damages." The same doctrine is reiterated in *Curtis v. Ward*, 20 Conn. 207.

The only case decided by this court, to which reference has been made, touching upon the particular question here involved, is *Bircher v. Parker*, 40 Mo. 120. There, by the terms of the lease, the tenant had the right, before the expiration of his term, to remove any erections made by him, provided they could be severed without material injury to the freehold. The landlord sued out an injunction and prevented him from making the removal, which was dissolved, and the court awarded judgment in favor of the tenant for what the erection would be worth when taken down. This court reversed the judgment on another ground, but approved the rule of damages adopted by the circuit court, in the following language: "When the injunction was dissolved, the tenant still had a reasonable time within which to remove the property, and if he was obstructed by the landlord, a right of action would then accrue for the value of the materials." This, it is true, may be regarded as a mere *obiter*, but whether a correct rule or not, as between landlord and tenant, we think that there is a very marked difference between such a case and the case at bar. A refusal by the landlord to permit his tenant to remove erections made by the latter, under an agreement that he might do so, would smack of fraud and oppression, and the rule contended for here might well be applied in such a case; but the ice-house in question was erected not by the beneficiary in the deed of trust, but by the grantor, and may have been placed upon the premises without the knowledge or consent, and in spite of the remonstrance, of the beneficiary, to the impairment of his

security, (if appellant's position is maintainable ;) and the purchaser under that deed stands in a very different relation to the mechanics, or the purchaser under their liens, from that occupied by the landlord to his tenant in *Bircher v. Parker, supra.*

A plaintiff suing for damages, does not sue for the amount which would measure the benefit derived by the defendant from his tortious act, but for the sum which will compensate him for the injury inflicted upon him by such act. The allegation is, that by that act he was damaged in a given sum, not that defendant was benefited by the act in any amount whatever. If the house had been blown down by a tornado and converted into a mass of rubbish, and defendant had prevented plaintiff from taking it away, what would he have recovered in a suit for damages? Certainly not the value of the building before its demolition. The refusal to permit the removal could not have damaged plaintiff as much as the destruction of the house by the tornado, if, in the latter case, he were permitted to exercise his right. The materials would be more damaged by the tornado than if the house were taken to pieces and removed. Why should he recover more for being prevented from removing it while it stood, if the elements of fraud, malice and oppression are absent from defendant's conduct?

That defendant derives an advantage from a refusal in one case and not in the other, is not a matter for the consideration of the jury. The plaintiff has no right to measure his damages by the defendant's benefit. That benefit defendant derived from his purchase, which was not of the land only, but of the house also against all the world, except the owners of the liens, and as to them subject only to their liens, which, when reduced to judgments and sold in execution, were merged in a bare right to remove the building from the premises.

It is urged that to permit the defendant to hold the property, worth on the ground $2,800, by paying its value when removed, were to offer a premium to wrongdoers. There

are two sides to this, as to most questions. We know that many costly edifices, ornaments to the localities in which they stand, and the pride of the community, are worth vastly less than the cost of erection. We will suppose one to own a valuable lot in the city of St. Louis which he has mortgaged for a sum of money nearly its full value, and, as often occurs, he is guilty of the folly of erecting a costly edifice upon it, which, on its completion, he finds incumbered with mechanics' liens for more than the entire property is worth in the market. The mortgage creditor purchases under his mortgage, and the purchaser under the mechanic's lien demands of him permission to enter and remove the building, which was substantially the only right he acquired by his purchase, to which the other accedes, as is most likely, if the rule of damages be established as plaintiff insists, and the result would be that by a species of legalized vandalism, the splendid edifice is demolished, and all that the greedy destroyer gets is the rubbish, for which the owner of the lot would cheerfully have paid a fair value and preserved the building.

But the argument, that it would hold out a premium to wrongdoers, would be equally applicable to cases like that of *Spencer v. Vance, supra,* and to all cases in which plaintiff is restricted in his recovery to the market value of property taken from him without regard to the value it possesses to the wrongdoer, in the absence of those elements which it is agreed authorize a jury to give smart money.

The rule recognized by the court of appeals, while in full accord with the foregoing authorities, is in consonance with reason and public policy, and its judgment is affirmed. SHERWOOD, C. J., and NORTON, J., concur; NAPTON and HOUGH, JJ., dissent.