SARAH MAYES, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 5, 1906.

1. **STREET RAILWAYS: Collision: Traveler's Rights: Car Following Vehicle: Looking Out.** A traveler in a vehicle on the street is not bound to look back for an approaching car, having used that precaution when entering upon the street. His primary duty is to look forward so as to proceed in safety to persons using the street, and may assume that persons in control of cars and other vehicles following will look out for his safety and avoid rear collisions; but the traveler upon ascertaining the approach of a following street car should get out of its way if he can do so in safety.

2. ———: ———: ———: ———: **Humanitarian Doctrine.** Where a traveler in a vehicle on a street, by reason of the situation of other vehicles, is compelled to drive dangerously near or upon a street railway track and is followed by a street car, his position is one of peril and where the following car can stop it is reckless and wanton negligence not to do so and the humanitarian doctrine applies.

3. **EVIDENCE: Expert Testimony: Distance of Stopping Car.** Certain hypothetical questions to an expert witness are held harmless although improper.

4. ———: ———: **Cause of Injuries.** While it is not competent to ask a physician to say that the plaintiff's injuries are the result of a fall, yet it is competent to ask him what might have produced the injuries.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED.

*John H. Lucas, Charles A. Loomis* and *S. C. Price* for appellant.

(1) The questions propounded to plaintiff's witnesses by her attorneys as to the distance in which the car could have been stopped were not proper hypothetical questions, and the witnesses were not qualified to give expert testimony on that point. Mammerberg v. Railroad, 62 Mo. App. 567; Benjamin v. Railroad, 50 Mo. App. 602; Turner v. Haar, 114 Mo. 345; Senn v. Railroad, 108 Mo. 142. (2) The questions asked plaintiff's witnesses if the gripman could have seen whether the tracks were gummy or wet were improper questions because these are matters of common knowledge and not for opinion or expert evidence. Gregory v. Chambers, 78 Mo. 294; Hurt v. Railroad, 94 Mo. 255; Railroad v. Stockyards Co., 120 Mo. 541; Gavisk v. Railroad, 49 Mo. 274; Walton v. Railroad, 40 Mo. App. 544; Naughton v. Stagg, 4 Mo. App. 271; State v. Dusenberry, 112 Mo. 227; Wharton on Criminal Evidence (8 Ed.), sec. 405. (3) The questions propounded to plaintiff's medical expert witnesses by her attorneys were not proper hypothetical questions in that they did not fairly and properly assume and present to such witnesses the facts and all the facts shown in evidence, and which were necessary for an intelligent expert opinion, and because they called upon the witnesses to say whether the fall from the buggy produced the injuries plaintiff claimed she had sustained, which was the very issue which the jury alone was to determine. Taylor v. Railroad, 185 Mo. 239; Gutridge v. Railroad, 94 Mo. 472; Boettger v. Iron Co., 136 Mo. 536; Langston v. Railroad, 147 Mo. 465; Hartman v. Muehlbach, 64 Mo. App. 565. (4) The first instruction for plaintiff should not have been given because it ignores the defense of contributory negligence entirely, and authorized the jury to find for plaintiff no matter how negligent she may have been in

putting herself in a place of danger and continuing therein, and notwithstanding such negligence on her part may have contributed directly to her injury; and for the further reason that it did not require the jury to find that the gripman knew, or should have known that plaintiff would not get out of the way of the car; and because it is contradictory of the second instruction given for defendant. Jones v. Talbot, 4 Mo. 279; Hickman v. Griffin, 6 Mo. 37; State v. McNally, 87 Mo. 644; Nasse v. Algermissen, 25 Mo. App. 186; Markowitz v. Kansas City, 125 Mo. 485; Flynn v. Bridge Co., 42 Mo. App. 529; Voegeli v. P. M. & G. Co., 49 Mo. App. 643; State v. Cable, 117 Mo. 380; State v. Brumley, 53 Mo. App. 126; Spillane v. Railroad, 111 Mo. 555; Zwisler v. Storts, 30 Mo. App. 164; State v. Herrell, 97 Mo. 105; Matthews v. Railroad, 63 Mo. App. 569; Goetz v. Railroad, 50 Mo. 474. (5) The third instruction given for plaintiff is erroneous and should not have been given: First, because it leaves the supposed future suffering of plaintiff from her alleged injuries too much to conjecture and speculation; and, second, because it refers the jury to the petition for the injuries for which they may give plaintiff damages. Grant v. Railroad, 25 Mo. App. 232; Remmler v. Shenuit, 15 Mo. App. 192; McGinniss v. Railroad, 21 Mo. App. 399; Proctor v. Loomis, 35 Mo. App. 482; Clark v. Loan Co., 46 Mo. App. 248; Railroad v. McGrew, 104 Mo. 282. (6) The third and fourth instructions asked on behalf of defendant should have been given. They would have presented the case to the jury, fairly and properly on the issue of contributory negligence, which issue was raised by the answer and supported by substantial evidence. Cornwell v. Transit Co., 106 Mo. App. 135; Minter v. Bradstreet Co., 174 Mo. 444. (7) Defendant's demurrer to the evidence should have been sustained. Gurley v. Railroad, 93 Mo. 490; Waldhier v. Railroad, 71 Mo. 514; Bohn v. Railroad, 106 Mo. 433; Hite v. Railroad, 130 Mo. 132; Chitty v.

Railroad, 148 Mo. 74; Raming v. Railroad, 157 Mo. 477; Boring v. Railroad, — Mo. —; Van Bach v. Railroad, 171 Mo. 338; Boyd v. Wabash, 105 Mo. 37; Wheat v. St. Louis, 179 Mo. 580; Guyer v. Railroad, 174 Mo. 344; Moore v. Railroad, 176 Mo. 536; Roenfeldt v. Railroad, 180 Mo. 554; Reno v. Railroad, 18 Mo. 469; Ries v. Transit Co., 179 Mo. 1.

*Reed, Yates, Mastin & Howell* for respondent.

(1) It is held by all of the authorities that the finding of the trial court as to who is competent to give expert testimony is a matter resting within the sound discretion of the judge, and is conclusive upon the appellate court, except where his ruling is founded upon clear error of fact or law. Fullerton v. Fordyce, 144 Mo. 519; Bradford v. M., K. & T. Co., 64 Mo. App. 475. (2) The questions propounded, of which complaint is made, were proper questions, and even had they been improper, the error in permitting them to be answered, could in no wise have resulted to appellant's prejudice; respondent had the right to assume that the track was dry since this is its normal condition, and there was no other testimony at that time in the case tending to show that it was not in its normal condition. (3) The hypothetical questions propounded to medical experts by respondent's counsel were proper. Redmon v. Railroad, 185 Mo. 14; Wood v. Railroad, 181 Mo. 453; Franklin v. Railroad, 87 S. W. 930; Glasgow v. Metropolitan Company, 89 S. W. 920; Holloway v. Kansas City, 184 Mo. 39; O'Neill v. Kansas City, 178 Mo. 100. (4) Plaintiff's instruction numbered 1 is absolutely correct; it is in accord with the repeated rulings of our Supreme Court. The instruction presents the last chance or humanitarian doctrine applicable to cases of this character. Klockenbrink v. Railroad, 172 Mo. 689; Kellney v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262.

BROADDUS, P. J.—This is an action for damages for personal injuries. The plaintiff's evidence tends to show that, on March 29, 1900, she drove a buggy in which she was seated with the top and side curtains up and the back curtains down, from Eleventh street west to Walnut street, crossed over the defendant's tracks to the south side and continued on south until she was opposite Wolferman's grocery store near the middle of the block, at which point her buggy was struck by one of defendant's cars operated by a cable, which threw her out upon the street whereby she was injured. This evidence tends to show that the space between the west rail of defendant's track and the curbing on the west was filled with vehicles of various kinds, so that in passing along she was compelled to keep so close to the defendant's track that there was not space enough for the car to pass her buggy without striking the wheels; that when she got opposite said store of Wolferman's in order to pass by it she had to get still closer, if not partially on said track; that she was travelling in a slow trot and the car was travelling at a speed of from three to four miles an hour, but faster than the speed of the buggy; that about the time she started south on Walnut street she saw a car pass coming from the north; that she saw no other coming from that direction, and she did not look again; that she did not hear the ringing of the gripman's bell for her to get out of the way of the approaching car until just before the collision; that the gripman saw her for a distance of sixty feet or more while her buggy was so near the track that the car could not pass without striking it; that the gripman had perfect control of the car and could have stopped it at any time within from nine to twelve feet; and that she was severely injured as the result of being thrown from her buggy.

The defendant's evidence was to the effect that, while plaintiff was driving south on Walnut street there

was sufficient room for the car to pass her, until she turned to pass the wagon at Wolferman's store, when she suddenly turned upon the track and was struck by the car, before the gripman had time to prevent doing so with the greatest effort on his part; that he gave the usual warning in such cases by ringing his bell; that he had perfect control of his car and could and did stop it in from nine to twelve feet. The verdict and judgment was for plaintiff for $2,000 from which defendant appealed.

The defendant demurred to plaintiff's case which was overruled by the court, which action of the court is assigned as error. The statement of the case we think shows that plaintiff was entitled to recover as she introduced evidence that tended to support the allegations of negligence set out in her petition. One of the grounds of negligence is that defendant negligently ran its car against her buggy when by the exercise of ordinary care, it could have avoided doing so. It is agreed that the defendant's gripman saw plaintiff while she was driving south along the side and close to defendant's track. And there was evidence, as has been stated, that her buggy was so close to the track that the car could not pass without striking it; that it was apparent that on account of the numerous vehicles on the street that she could not get out of the way of the car; that the gripman could and should have seen and known that the buggy would have to get onto the track in order to get by the wagon in front of Wolferman's store; and that the gripman could have stopped the car in a few feet as it was going but a little faster than the buggy.

It seems to us that the facts support the allegation of negligence on the part of defendant. And not only that, it tends to show also that plaintiff was not negligent on her part. She had the right to be on the street at the place and time in question. She was not bound to look back to see if a car was coming having used that

precaution when she got upon the street. It is the duty primarily of person driving vehicles on the street while exercising proper care for their own safety to look ahead so as to be able to proceed with safety to the occupants and persons using such streets. And they have the right to presume that persons in control of street cars and other vehicles following them will be on the lookout for their safety, and avoid running upon them from behind. It is true that if plaintiff had heard the gripman's bell it was her duty to have got out of the way in order to let the car pass if she could have done so in safety. But it appears that owing to the fact that, another one of defendant's cars was approaching from the south, it would not have been prudent or safe for her to have turned her vehicle to the east. It seems that she was aware of the fact that she was in a place where it was dangerous to remain and that she pursued a reasonably safe course by continuing to drive along the street. And she had the right to assume that those following her would be on the lookout for her safety as has been before stated.

Another allegation of the petition is that defendant's employees in charge of the car did see or could have seen that she was in a dangerous situation, and could have by the exercise of ordinary care prevented the collision. There was ample evidence to sustain the allegation. That the gripman did see plaintiff is not denied. But it is denied that she was in a dangerous situation. It is argued that she was in an open street, with nothing to prevent her from driving along in advance of the car as it was going at a very slow rate of speed, so that an ordinary horse could easily have kept ahead and avoided a collision. She was in peril however while she was so near the track that the car could not pass without striking her vehicle, so long as the car continued to advance at a greater rate of speed than that of plaintiff's vehicle. The gripman saw no evidence of increasing

speed on plaintiff's part, and as his car continued to advance and gain on plaintiff he had no right to assume under the facts that she would drive ahead out of the way. As the distance between the car and plaintiff decreased in proportion to the greater speed of the car her situation was evidently, under the circumstances, one of peril. The defendant's argument does not dispose of the question of peril, but merely goes to show that upon the happening of the contingency suggested, that plaintiff would increase her speed, the collision would not have occurred. But after all the result showed that plaintiff was in peril. If plaintiff was in peril the act of defendant's gripman in producing the collision, it seems to us was reckless and wanton as he not only could have seen but did see her dangerous situation in time to have avoided it, had he exercised ordinary care. In fact there was evidence that the car pushed plaintiff's buggy a distance of fifteen feet before it turned over. If this be true he could have stopped the car after he struck the buggy before it turned over and the injury would have been avoided. Such negligence is said to be reckless or wanton. [Moore v. Transit Co., 92 S. W. 390.] Whatever controversy may have existed heretofore as to what would constitute *reckless* or *wanton* conduct upon the part of those operating dangerous machinery upon the streets of a city, there can be no longer any doubt as to the meaning attached to those words since said decision. It was therefore proper that the case should have been submitted to the jury upon the theory of the humanitarian doctrine in the event that the jury should find that plaintiff through her negligence placed herself in a situation of peril.

Particular objections are made to the manner in which certain hypothetical questions were asked. One as to the time in which the car could have been stopped by the gripman had he made the proper effort. The objection is that the question did not include all the

facts in the case relating to the matter. Admitting the correctness of defendant's contention, it is of no importance as defendant's gripman testified that he could have stopped the car in from nine to twelve feet, and none of plaintiff's witnesses testified that it could have been accomplished in a shorter distance.

Dr. Park L. McDonald a medical expert was asked: "Doctor are those injuries you have described such injuries as might naturally have resulted from the patient having been thrown from a buggy on the street?" Doctor Jones was asked: "Doctor, was the condition of the womb and knee such as might have resulted naturally from the patient having been thrown from a buggy on the street pavement?" Other questions of similar import were asked. A similar question arose in Glasgow v. Railway, 191 Mo. 347. It is there held that it is not competent to ask a medical expert to say that, in his opinion that plaintiff's condition was the result of an alleged fall, but that it was competent for him to state what cause or causes might produce such a result. Tested by the above rule the evidence was competent. The question was also discussed in Holloway v. Kansas City, 184 Mo. 19, in which the court takes the same view of the law.

This in our opinion is a case well supported by the evidence. Taking into consideration all the testimony we believe that defendant was negligent and that plaintiff was severely injured. The verdict is for the right party and ought to be affirmed, which is accordingly done. All concur.