CODY, Respondent, v. GREMMLER, Appellant.

St. Louis Court of Appeals, December 22, 1906.

1. **PRACTICE: Instruction: "From the Evidence."** In an action for assault, where actual and punitive damages were asked, an instruction authorizing a verdict for plaintiff for actual damages on a finding of certain facts "from the evidence," then authorized an assessment of punitive damages on a finding that the assault was made wantonly and maliciously without requiring that finding to be "from the evidence"; such instruction was not erroneous because there was no occasion to repeat the caution that the finding must be "from the evidence."

2. ———: ———: Defining Terms: Wanton. In an action for damages, where a verdict for punitive damages was authorized on a finding that the injury was "wantonly and maliciously" inflicted, and where the term "malice" was properly defined in other instructions, it was not necessary to define the meaning of the term "wanton" any more than other ordinary words used.

3. DAMAGES: Punitive Damages: Excessive Verdict. In an action for damages caused to plaintiff by the assault and battery of the defendant, where the evidence showed that the plaintiff was a small man over sixty years of age and the defendant was a large man of thirty-seven years of age, that defendant assaulted plaintiff without cause, knocked him down, kicked him into unconsciousness and set his dogs on him, a verdict for $500 punitive damages was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Dodge & Mulvihill* and *Walter H. Saunders* for appellant.

(1) Instructions as to exemplary damages must be based upon the evidence. McQuillin, secs. 1240-1242; Milligan v. Railroad, 79 Mo. App. 396; Lemon v. Chandlor, 68 Mo. 359; McPherson v. Railroad, 97 Mo. 259; Rogers & Powers v. Warren, 75 Mo. App. 275; Baker v. Railroad, 52 Mo. App. 607. (2) If the court, however, should find that the instruction complained be a correct rule of law, then we submit that the punitive damages are excessive and can be reached by a remittitur. Newcomb v. Railroad, 182 Mo. 687; 18 Ency. Pl. and Pr., 143, 144.

*John S. Leahy* for respondent.

(1) The prime object of instructions is to afford the jury a clear and plain view of the legal principles applicable to the case, by which they may be guided.

Planton v. Dolb, 109 Mo. 64. (2) Instructions must be considered in connection with the evidence in the case. If there is no probability that the jury was misled, the judgment will not be reversed, though the instruction may have been abstractly incorrect. Alberger v. White, 117 Mo. 347. (3) Failure to embrace all the issues in the case in one instruction is not error, if they are included in the series of instructions given for either party. Muelhausen v. Railroad, 91 Mo. 332. (4) An omission in one instruction, even though material, if supplied by a subsequent instruction, will not afford ground for reversal. State ex rel. v. Hope, 102 Mo. 410; Noble v. Blount, 77 Mo. 235; McKeon v. Railroad, 43 Mo. 405; Burdoin v. Trenton, 116 Mo. 358; Meade v. Railroad, 68 Mo. App. 92. (5) The judgment will not be disturbed as being excessive unless it is so out of line with reason and justice as to shock the conscience or to satisfy the unbiased mind that it was not the result of impartial and unprejudiced deliberation. Perrette v. Kansas City, 162 Mo. 238; Ryan v. Hospes, 167 Mo. 342; Zellars v. Water & Light Go., 92 Mo. App. 107; Smiley v. Railroad, 160 Mo. 629; Covell v. Railroad, 82 Mo. App. 180; Langan v. Weltner, 180 Mo. 322.

BLAND, P. J.—The action is for actual and punitive damages caused by an assault alleged to have been made by appellant on respondent, on May 6, 1904, in the city of St. Louis. The evidence shows that appellant and respondent lived near each other in said city, but were unacquainted. It tends to show that on the morning of the day the assault was made, appellant's thirteen-year-old son made complaint to him that respondent's son had assaulted him and bruised his head. In the afternoon respondent was leading his cow passed appellant's house, when he was pointed out to appellant by his son. Appellant walked out, opened his gate and went to respondent in the street. An altercation ensued,

resulting in a fight between appellant and respondent. Appellant maintains respondent commenced the fight by following him up and striking him in the face with his fist. Respondent maintains that appellant, without provocation, struck, beat and kicked him into unconsciousness and then set his dogs on him. Four by-standers testified that appellant walked through his gate, spoke to respondent, struck him, knocked him down three times, and after knocking him down the third time, kicked him several times in the head and while he was down set his dogs on him.

Dr. Button, police officer Driscoll and four other witnesses testified to the unconscious condition of respondent after the assault, and the doctor testified respondent had a wound on his head, that he found impressions on his legs which might have been made by dog bites, and gave it as his opinion that respondent's unconscious condition was caused by concussion of the brain. It was two months before respondent was sufficiently recovered from his injuries to return to work. The statement is made (uncontradicted) in respondent's abstract of the evidence, that respondent was a small, weak man, between sixty and seventy years of age; that appellant was thirty-seven years of age, five feet, eleven inches in height, and weighed over two hundred pounds. The jury found the issues for respondent and assessed his actual damages at one hundred dollars and punitive damages at five hundred dollars.

It is contended by appellant's counsel that the court erred in giving the following instruction:

"The court instructs the jury that if you find and believe from the evidence that on May 6, 1904, defendant, without cause or reason, assaulted and beat plaintiff with his fists and kicked him with his feet, or either beat or kicked him, causing plaintiff bodily pain and injury and incapacitating him from labor, then you will find a verdict for plaintiff and assess his actual damages,

if any, at such sum as will reasonably compensate him for any bodily injuries he sustained and pain he endured, and any time he lost, not to exceed one month, as a direct result of such assault, and if you find the assault was made wantonly and maliciously you may also assess smart money; that is, punitive damages, for the purpose of punishing defendant, and to serve as a warning to him and others against similar assaults."

1.   The particular harm in this instruction, appellant states, "is the fact that, as to the first part of the instruction, the jury were to base their finding 'on the evidence,' while in the latter part of the same instruction, relating to punitive damages, the jury were told their finding could be based on what they believe from what had gone before, the terms 'from the evidence' not being stated." We think the learned counsel's criticism of the instruction is not merited. As a predicate to authorize the assessment of punitive damages, the jury were required to find from the evidence that appellant assaulted and beat the respondent with his fists and kicked him with his feet, or either beat or kicked him, causing his injuries; if they first found these facts (from the evidence) and further found that the assault was wanton and malicious, then they were authorized to assess punitive damages. Wantonness and malice were not the subjects of direct proof, but might be inferred from the nature and character of the assault, as developed by the evidence and found by the jury, and having been once told what they found should be upon the evidence, there was no occasion to repeat this caution in the same instruction.

2.   It is contended that the court erred in failing to define the words "wantonly and maliciously," as used in the instruction. Malice was properly defined in another instruction given by the court of its own motion. The term wanton has no peculiar legal signification. It has various meanings, depending on the connection in which

it is used. It may mean sportively, playfully. When used to characterize wrongful conduct, it may mean foolhardiness, heartlessness, maliciousness, recklessness, reckless disregard of the right of others, gross carelessness or negligence. As used in the instruction, it meant maliciously, or a wrongful act done on purpose, without just cause or excuse, and could not have been understood by the jury to mean anything worse or more damaging to the appellant than this. Hence, we do not think there was any more occasion to specifically define its meaning than to define the meaning of other ordinary words used in the instruction.

3. It is insisted that the punitive damages are excessive. We are not of that opinion, for there is abundant evidence in the record to characterize the assault as fiendish and brutal and calling for severe punishment at the hands of the jury.

The judgment is affirmed. All concur.