## CHICAGO, R. I. & G. RY. CO. v. BENTLEY.

No. 5950.   Opinion Filed September 22, 1914.

(143 Pac. 179.)

1.  **APPEAL AND ERROR**—Evidence—Harmless Error—Hypothetical Questions.  A hypothetical question sufficiently comprehensive to cover the essential facts testified to by plaintiff as to how and where an injury was occasioned is not improper for the sole reason that it does not embrace all the facts in the record; nor is it reversible error to permit an expert witness to testify that, in his opinion, certain causes could have produced certain results.

2.  **TRIAL**—Instructions—Pleadings.  It is the correct practice generally to state the issues of the case as made by the pleadings to the jury; and it is not error to properly summarize in the instructions the allegations contained in the pleadings.

3.  **CARRIERS**—Injury to Passenger—Sufficiency of Evidence—Instructions.  Upon review of the entire record, held that the judgment is amply sustained by the evidence and that the instructions of the court fairly present the law of the case.

(Syllabus by the Court.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Action by Julia A. Bentley against the Chicago, Rock Island & Gulf Railway Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble, K. W. Shartel,* and *Stevens & Myers,* for plaintiff in error.

*Stuart, Cruce & Cruce,* for defendant in error.

BLEAKMORE, J.  This is an action instituted in the court below by the defendant in error, as plaintiff, against the plaintiff in error, as defendant, for damages alleged to have been sustained on account of personal injuries received by reason of the servants of plaintiff in error forcibly pulling and jerking her from the steps of a passenger coach to the platform.  The parties will be referred to herein as they appeared in the trial court.  Plaintiff recovered judgment, and defendant brings the case here.

The plaintiff, a woman 54 years old, who lived near Rush Springs, Okla., left Lone Oak, Tex., on the 25th of November, 1911, having purchased a through ticket to Rush Springs, Okla., over the Missouri, Kansas & Texas Railway Company and the line of the defendant. She reached Ringgold, Tex., on the road of the defendant company, between 10 and 12 o'clock at night, having in her hand at the time a box eighteen inches long, twelve inches wide and eight inches thick, weighing about ten or twelve pounds, with which she attempted to board the train. Her testimony is, in part, as follows:

"Q. Now just state to the jury, Mrs. Bentley, what happened when you started to get on the train? A. As I went to get on? Q. Yes? A. Well, as I started up the steps he says, 'Where to?' and he gave me a lift up on the steps. Q. How did he give you the lift? A. Taken me by the arm. Q. Which arm? A. Left arm; lifted me up and says, 'Where to?' I says, 'Rush Springs.' He says, 'Hold on here, we handle nothing to Rush Springs,' and give me a jerk as I got on, and I caught on my right foot, and I just caught as I stepped and turned and careened, and I felt a hurt through my hip and through me here. Q. Whereabouts through your hip? Show the jury about it. A. Well, it just caught me through the lower part of the back and through my hip and through me here. Q. Through the groin, back through here? A. Hurting just come through inside of me. Q. Which hip? A. My right hip. Q. Then what happened? In stepping back, did you step back to the ground, and you careened and caught on your right foot; did you catch light or heavy? A. Heavy; appeared like it jarred me as I got off of them steps. It seemed like all my weight went on that side. Q. Is that the side you had the bundle on? A. Yes, sir. Q. Go ahead; what happened then? A. Well, he says, 'Hold on, we handle nothing to Rush Springs,' and he jerked me off. * * * Q. Now, I wish you would explain to the jury just what kind of a pain you have had since that injury. A. What kind of a pain? Q. Yes, A. Well, I can hardly do that, for I have had so many of them and so bad, until I can't hardly explain. Q. Is that the pain you spoke of a while ago, that runs through from the groin to the back? A. Yes, sir; every day, and you might say all the time. It is just every day. Q. How about your kidneys? A. I just sleep most of the time when I have to—when the sleep overtakes me. Q. Can you sleep any time when you want to? Can you sleep any time you

want to, in any position you want to, on your side or back? A. Just got one way to sleep, just have to sleep that way. What sleeping I have done now ever since I was hurt, just one way, and I have got a position down on my right hip like, on my right side, and get myself shaped on the bed that way. I can't sleep on my back any; can't sleep on the other side; can't lay on but just my right side; that's the way I rest. Q. Have you ever had that trouble before? A. No, sir; always lay and sleep any way I wanted to, if it was to lay down on a blanket—any way I wanted to, or turn about any way I wanted to. * * * Q. I see you use crutches. Do you have to use those crutches? Can you walk without them? A. I can walk on a floor without them if I watch myself, or on a smooth place if I watch myself and be careful, but I can't travel without them; I can't go without them. I fell twice and hurt myself bad since I have been sick, and so I just keep my crutches with me all the time."

The errors assigned are: (1) That the court erred in admitting incompetent, irrelevant, and immaterial testimony over the objection and exception of the defendant; and (2) that the court erred in giving instructions to the jury excepted to by defendant at the time.

Under the first assignment it is urged that there was error in overruling defendant's objection that "it is an attempted hypothetical question, improperly formed and incomplete in detail, and too indefinite to make an accurate answer in the nature of a medical opinion as to whether or not it would produce the result asked for by the question," to an interrogatory propounded to one of plaintiff's medical experts, in the following language:

"Q. Let me ask you this question: Suppose a woman of Mrs. Bentley's size and age, 56 years old now, when she was 53 or 54 years old at that time, and had in her arms a box that would weigh ten pounds, and stepped upon the steps of a coach —railway coach—and she was pulled back so that in stepping she fell with all her weight on her right foot in a way that careened her a little, and jarred her, what is your opinion as to the fact as to whether it would produce such rupture as you have found? A. It could; yes, sir."

This witness had testified that he was well acquainted with plaintiff, had attended her as a physician shortly after the alleged injury and later, and knew her then physical condition. There

was incorporated in the question the essential facts testified to by plaintiff as to where and how her injuries were occasioned. A hypothetical question is not improper simply for the reason that it does not embrace all the facts in the record (*Brooks v. City of Sioux City*, 114 Iowa, 641, 87 N. W. 682; Rogers on Expert Testimony [2d Ed.] sec. 65); and in the light of the record we find the question sufficiently comprehensive and definite to justify the action of the court in permitting it to be answered.

Plaintiff also introduced a witness, a physician, George D. McClain, who was present in the courtroom and heard the testimony of the plaintiff. He examined her in June, 1912, and again two days before the trial, and found her suffering with hernia and an injury to the hip joint, her right leg shortened, and her right kidney slightly movable. He was asked, and answered, without objection, the following questions:

"Q. Which leg was it you found the shortest? A. Right. Q. What did you find was the cause of that? A. I could not tell about the cause, Mr. Cruce. I can only tell what I found. There are many causes that will make it. Q. What do you find that is the probable cause of this? A. I cannot tell you what the cause was. I can tell you what I found there, and there are many causes. Q. What are some of the causes? A. Well, the most common cause is tuberculosis of the hip joint; that is, the largest number of them. Many of them are injuries, injuries to the hip joint, like a broken bone, jolt, bruise, or anything that will produce an injury to the joint itself. Q. Is the most common cause the tuberculosis? A. Yes, sir."

It is further contended that there was prejudicial error in the admission of the following testimony of this witness, in that the hypothetical question addressed to him calls for an opinion as to possibilities rather than probabilities:

"Q. I will ask you what, in your opinion, as a physician and as a surgeon, whether in your opinion as a physician and surgeon, whether the facts she testified to could or could not produce the rupture—the injury to that hip joint that you found, or to the kidneys? (Objected to by defendant, as incompetent, irrelevant and immaterial, and not a proper form of a hypothetical question, and calling not for a positive injury, and therefore not within the proper form. Objection was by the court overruled,

to which ruling defendant excepts.) A. It may cause it. (Defendant moves to strike the answer of the witness from the consideration of the jury, and asks that the jury be instructed to disregard it, because it is a possible, and not a probable, injury. Motion is by the court overruled, to which ruling defendant excepts.) A. May I explain that answer? Q. Yes. A. In stepping, in an old person of any character, in stepping in any position, that is, a down step, either forward or backward, when they are not looking, and do not see the distance they are to go, the injury to the hip—an injury to that portion—is very common, so the height would have very little to do with it. The fact of the stepping off of anything, it don't make any difference what it is when they are not looking, if they be not balanced well, they will get a jolt very liable to give an injury."

In *Donnelly v. St. Paul Ry. Co.,* 70 Minn. 278, 73 N. W. 157, it is said:

"Neither do we appreciate the fine distinctions sometimes sought to be drawn between asking an expert whether, in his opinion, certain causes might produce certain results and asking him whether in his opinion, they did produce such results."

In *Sachra v. Town of Manilla,* 120 Iowa, 562, 95 N. W. 198, the following testimony was held competent:

"Q. What do you say about a person being able to injure or strain himself by falling, or starting to fall, and catching hold of a corncrib and jerking himself—being able to produce this? A. I should think it was possible. Q. What do you say about the injury in fact having been such an injury that it might have resulted from a wrench or strain of the hip or parts? A. I think it could."

In *Pacific Mut. Life Ins. Co. v. Shields* (Ala.) 62 South. 71, it was held:

"There was no error in allowing Dr. Rowe to testify that a blow on the back of the head might produce death. There was some testimony tending to show that deceased had received a blow on the back of his head, and that he might have received it by violent means, within the conditions of the policy."

In *Mayes v. Metropolitan St. Ry. Co.,* 121 Mo. App. 614, 97 S. W. 612, a medical expert was asked:

"Q. Are those injuries you have described such injuries as might naturally have resulted from the patient having been thrown from a buggy on the street?"

And another expert was asked:

"Q. Was the condition of the womb and knee such as might have resulted naturally from the patient having been thrown from a buggy on the street pavement?"

The court held:

"A similar question arose in *Glasgow v. Metropolitan Street Ry. Co.,* 191 Mo. 347, 89 S. W. 915. It is there held that it is not competent to ask a medical expert to say that, in his opinion, plaintiff's condition was the result of an alleged fall, but that it was competent for him to state what cause or other causes might produce such a result."

In *Traveler's Ins. Co. v. Thornton,* 119 Ga. 455, 46 S. E. 678, it is said:

"Under the decision in *Thornton v. Travelers' Ins. Co.,* 116 Ga. 121, 42 S. E. 287, 94 Am. St. Rep. 99, it was left for the jury to say whether the injury was caused by the fall and aggravated by the hernia, or whether the hernia was a contributing cause to the injury. A physician could give an opinion on hypothetical facts on what he had heard other witnesses testify in the case, or on facts discovered by his own investigation. He could state what, in his opinion, would have been the effect of the blow to the plaintiff without a hernia, and what the effect of the blow with the hernia. An expert can testify as to what was the cause of death, or of an injury, or as to the effect of disease, or as to the effect of a blow upon one sound or upon one unsound. He can give his opinion on physical facts or as to medical facts, but he cannot determine the legal classification of such facts. It was not proper for him to use the language of the decision and testify that the hernia was a 'contributing cause.' * * * The expert may aid the jury, but he cannot act as a member of the jury; nor, while on the stand, can he transcend the functions of a witness, and under the guise of giving testimony, state a legal conclusion."

"It has been held to be improper to ask an expert what caused a wound; the proper form of the question being to ask what might have caused it. What caused a wound is for the jury, and not mere matter of opinion." (Rogers on Expert Testimony, p. 128.)

In *Taylor v. Railway,* 185 Mo. 239, 84 S. W. 873, it is said:

"It would have been proper to state to the plaintiff's experts the nature and extent of the injuries received by the plaintiff as they appeared at the time of the accident, and then to

ask them whether or not, in their opinion, such injuries might, could, or would result in paralysis. The experts having thus given an opinion, it would have been for the jury to find the fact as to whether in this particular case the paralysis was caused as the plaintiff's expert witness said it might have been caused, or whether it was the result of other causes. * * * To the trained legal mind there is a very essential difference between permitting an expert to give an opinion and permitting him to draw a conclusion. The one is the province of a witness; the other is, in the first instance, the special prerogative of the jury. And when a witness is thus permitted by the court to invade the province of the jury, it goes to the jury with the indorsement of the court, and is calculated to make the jury believe that it was proper for the witness to find the fact instead of the jury doing so."

There are many cases in which a physician or a surgeon may give his opinion as to what could or might produce a given result, as in this case; and there are also cases in which such expert witness may testify as to what causes actually produced a certain result. The latter cases, however, are more commonly confined to those instances in which the facts presented to the witness lead inevitably to one scientific conclusion; and it has been held even in such cases that the more correct rule would perhaps be to limit the testimony of the expert to a statement of the scientific facts and leave the conclusion necessarily to be drawn therefrom to the jury. In the instant case all that could properly be elicited from the witness by any inquiry was that, in his opinion, the injury could or could not have resulted by reason of the plaintiff being pulled or jerked off the steps of the coach in the manner testified to by her. Whether or not the injury thus occurred, or whether it was the result of other causes, was a question for the jury to determine. The hypothetical question complained of invites, and the answer thereto gives, only the opinion of the witness as to whether the causes testified to by plaintiff *were sufficient to produce the injury to her person.* This same witness had testified that he could not tell the cause of the plaintiff's physical condition; that it might have been the result of a number of causes named by him. The objection goes more to the weight than to the competency of the evidence.

However, the witness having qualified his answer, without objection, explaining that his testimony was confined to the injury to plaintiff's hip, renders the whole of the testimony sufficiently certain to supply any defect that might be urged to the inartificiality of the question propounded, and left the jury in no doubt as to his testimony. As to whether such testimony was of any value to them in arriving at their verdict, it is impossible to say; but in no event could the defendant have been prejudiced thereby.

It is urged as a ground of reversal, under the second assignment of error, that the court in the instructions so fully summarized the allegations in the petition as to amount, practically, to allowing the jury to take the pleadings with them to the jury room. There is no merit in this contention. It is the correct practice, generally, for the court to state the issues of the case made by the pleadings to the jury; and an examination of the instruction complained of discloses that there was no improper departure from this rule therein.

It is further contended that there was prejudicial error in referring to the jury the question of all the injuries alleged to have been sustained by the plaintiff, including the injury to the spine, for the reason that there was no direct evidence of any such spinal injury. An examination of the evidence convinces us that it is sufficiently comprehensive to embrace such injury, and there was no error in the giving of said instruction.

A review of the entire record discloses that the judgment is amply sustained by the evidence, and that the instructions of the court, as a whole, fairly present the law of the case.

No error appearing, the judgment of the trial court is affirmed.

All the Justices concur.