## OHIO CASUALTY INS. CO. v. WELFARE FINANCE CO.*

### No. 9915.

Circuit Court of Appeals, Eighth Circuit.

Dec. 20, 1934.

James R. Claiborne, of St. Louis, Mo. (John W. Joynt and Bishop & Claiborne, all of St. Louis, Mo., on the brief), for appellant.

George C. Wilson, of St. Louis, Mo. (Daniel G. Taylor, Jacob Chasnoff, Hugo Monnig, Jr., and James V. Frank, all of St. Louis, Mo., on the brief), for appellee.

Before STONE, GARDNER, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from a recovery on a policy of liability insurance.

The policy insured appellee "against loss by reason of liability imposed by law upon the assured for damages on account of bodily injuries * * * accidentally sustained * * * by any person or persons, other than employes of the assured. * * *"

During the life of the policy an action was brought against the assured by Florence Dauster for personal injuries arising from backing a truck, operated by a servant of the insured, out of a garage while she was standing on the running board without leaving sufficient clearance, and thereby throwing her to the ground. The negligence alleged was in this movement of the truck. In addition to a prayer of $25,000 for actual damages, punitive damages were sought in the same amount because "the aforesaid acts of defendants were unlawful, wrongful, wanton and done in a reckless disregard of plaintiff's rights and safety." There was a recovery of $5,500 actual damages and $10,000 punitive damages.

Appellant was promptly notified of the bringing of the above suit, and assumed entire defense thereof for appellee. Subsequent to the above recovery, appellant raised the question that it was not liable for more than $10,000 upon its policy and in no event liable for punitive damages. Subsequently the parties hereto ascertained that the above judgment could be settled for a total payment of $9,000 and costs. This they did through an arrangement which embodied the payment of costs and $3,000 by appellant and the payment of $6,000 by appellee; it being further agreed that, if the above policy should be held to cover punitive damages, there should be recovery by appellee of $5,000 (of the above $6,000 paid by it).

To recover the above $5,000, this action was brought on the policy. Jury was waived, the court made findings of fact, and stated, as a conclusion of law, that the policy did insure appellee "against loss by reason of liability imposed by law for exemplary damages, under the facts shown in evidence."

*Certiorari denied 55 S. Ct. 645, 79 L. Ed. —.

The position of appellant and its argument is along two lines, as follows: First, that the policy insured only against "accidentally sustained" injuries, and that this did not include anything but compensatory damages; and, second, that, if the policy should be held to include punitive damages, it would be against public policy. The argument of the appellee is that the appellant is foreclosed here to raise the first point under the above settlement agreement between the parties and the facts, and that, as to the second point, the law is not as stated by appellant, for the reason that the liability of appellee in the personal injury suit was purely one of respondeat superior in a matter where it had not authorized or known of the act causing the injury and had no knowledge of any propensities of its servant which would put it upon its guard against such actions.

It seems to us appellee is wrong in its contention that appellant cannot raise the point of the meaning of the policy. This contention is based upon the assertion that the agreement between the parties at the time of settlement of the Dauster judgment was that the only defense to a suit upon the policy would be that to allow recovery thereunder for punitive damages would be against public policy. While there is testimony to the above effect by Mr. Chasnoff, who was a witness for plaintiff, the transcript includes an agreement in open court as to what the above settlement agreement was. That statement is that liability for the $5,000 should depend upon whether the policy covered punitive damages, and was in no wise limited to any particular reason (such as being against public policy) why it should not be so regarded. We must take this statement as embodying the agreement and particularly so as the finding of the court on that point is that recovery should be had herein "unless defendant herein could defeat such recovery on the defense that defendant's policy did not cover or insure plaintiff against loss by reason of liability for exemplary damages in the Dauster suit" —the above quotation is from finding 4, and there is a similar expression in finding No. 6.

The contention of appellant that exemplary damages are outside of the language and meaning of the policy is not well taken. The policy insured "against loss by reason of liability imposed by law upon the assured for damages on account of bodily injuries * * * accidentally sustained. * * *" The basis of the Dauster action was negligence and nothing more than negligence. Obviously, negligence is covered in the term of the policy "accidentally sustained." The assessment of punitive damages was a "liability imposed by law upon the assured" in connection with and because of the bodily injuries and the aggravated conduct of the servant in causing such injuries. Under the Missouri law, where injuries are negligently caused and the negligence is of such an aggravated form or attended by such circumstances as to be wanton and reckless in character, punitive damages are authorized. Reel v. Consolidated Inv. Co. (Mo. Sup.) 236 S. W. 43, 46; Parsons v. Mo. P. Ry. Co., 94 Mo. 286, 297, 299, 6 S. W. 464; Seibel v. Siemon, 72 Mo. 526, 531; Franz v. Hilterbrand, 45 Mo. 121, 123; Kennedy v. North Mo. R. R. Co., 36 Mo. 351, 365; Leahy v. Davis, 121 Mo. 227, 232, 25 S. W. 941, 942. And see Hudson v. L. & N. R. Co., 30 F.(2d) 391, 392 (C. C. A. 5), and Westre v. C. M. & St. P. Ry. Co., 2 F.(2d) 227, 229 (C. C. A. 8).

As a basis for recovery of punitive damages, the Dauster petition alleged that the negligent acts were "unlawful, wrongful, wanton and done in a reckless disregard of plaintiff's rights and safety." The words of this quotation which are significant are "wanton and done in a reckless disregard of plaintiff's rights and safety." The real meaning of this statement is that the negligence amounted to recklessness, since that is the meaning of wanton when used in connection with negligence. Mayes v. Metropolitan Street Ry. Co., 121 Mo. App. 614, 621, 97 S. W. 612, 613; Cody v. Gremmler, 121 Mo. App. 359, 363, 364, 99 S. W. 46, 47; Cleveland, C. C. & St. L. Ry. Co. v. Tartt, 64 F. 823, 825, 826 (C. C. A. 7). Also see Strough v. Central R. R. Co., 209 F. 23, 26 (C. C. A. 3); Western Union Tel. Co. v. Catlett, 177 F. 71, 75 (C. C. A. 4); Hazle v. Southern Pacific Co., 173 F. 431, 432 (C. C. Ore.); Seago v. Realty Co., 185 Mo. App. 292, 299, 170 S. W. 372; Plummer v. Kansas City, 48 Mo. App. 482, 484.

Since this policy clearly covers bodily damage through negligence and since these punitive damages are imposed because of the aggravated circumstances or form of this negligence, such punitive damages must be regarded as coming within the meaning of the policy.

If punitive damages are within the meaning of the policy there arises the second point urged by appellant, to wit, that such a provision is unenforceable as against

public policy. The public policy so invoked is thus expressed by appellant in its brief:

"To allow one to insure oneself against the punishment intended in a verdict for punitive damages would be to defeat the purpose of the law in such case made and provided. To enforce the contract sued on in this case and to protect the appellee against punishment would be the same as to permit a defendant in a criminal case, after having been tried and convicted and sentenced to confinement either in a jail or a penitentiary, to substitute another in his stead."

If this provision in the policy must be construed as having the above effect, it should be held invalid. The policy is general in its terms, and on its face imports no protection from illegal acts. Appellant cites several cases supporting its position which are cases of willful injury perpetrated by the person protected by the insurance there involved. In the situation presented by such cases it is obvious that a grave question of validity would arise, since it might well be said that it would be against public policy to permit a person to protect himself in advance against the consequences of intentional wrongdoing injurious to others. A different situation is present where the sole liability of the insured arises out of the relation of master and servant. If the master participates in, authorizes, or knows in advance that his servant will probably commit the unlawful injurious act, then the situation may be analogous to where the insured himself commits an intentional act with an intended injury and the same reasons for holding a protecting policy invalid as to such acts would exist. However, the court has here found that there was no evidence that the servant causing the injury here "had been instructed by plaintiff to act in a negligent, wanton, wrongful or unlawful manner towards Florence Dauster, nor that the alleged negligence or wrongful acts of Keith were necessary to the performance by Keith of his duties as the employee of plaintiff, nor that he had ever previously been guilty of such or similar actions."

In this situation where there was no direct or indirect volition upon the part of the master in the commission of the act, no public policy is violated by protecting him from the unauthorized and unnatural act of his servant. 36 C. J. p. 1060; Messersmith v. American Fidelity Co., 187 App. Div. 35, 175 N. Y. S. 169; Taxicab Motor Co. v. Pacific Coast Casualty Co., 73 Wash. 631, 132 P. 393; Georgia Casualty Co. v. Alden

Mills, 156 Miss. 853, 127 So. 555, 73 A. L. R. 408; Robinson v. U. S. Fidelity & Guaranty Co., 159 Miss. 14, 131 So. 541.

We hold that the punitive damages under the facts here must be held to be within the meaning and protection of this policy; that there is no public policy, under the circumstances of this case, requiring such provision to be held invalid; therefore, that the judgment should be and is affirmed.