## *WICHITA FALLS & N. W. RY. CO. v. PUCKETT.

No. 6637.   Opinion Filed October 12, 1915.

Rehearing Denied May 2, 1916.

(157 Pac. 112.)

1.   **PLEADING—Plea to Jurisdiction—Defenses Available.** Where a domestic railway company is sued in a state where incorporated by one claiming to be an employee of said railway company, and claiming to have been injured by defendant's negligence while doing its work in another state, and summons is properly served on defendant's local agent in the state of its incorporation, **held,**

*Appealed to the Supreme Court of the United States.

the defense that the plaintiff was not the defendant's employee or under its control is not available under a plea to the jurisdiction of the trial court.

2.   TRIAL — Injuries to Servant — Actions — Evidence—Objections. Where the defendant's plea to the jurisdiction of the trial court has been overruled and it has answered, setting up its defense to plaintiff's action, it is not error to overrule its objection to the introduction of any evidence, and a motion to be discharged on the ground that the court has no jurisdiction to render a judgment against it and on other specific grounds, which are substantially the grounds of defense set up in the answer.

3.   TRIAL—Taking Case From Jury—Demurrer to Evidence— Direction of Verdict. The defendant's demurrer to the evidence and motion for an instructed verdict, at the close of the evidence in the trial court, are properly overruled where there is any competent evidence before the jury which, if true, would support a verdict in plaintiff's favor.

4.   PLEADING—Reply—Necessity. Where the answer of the defendant contains no new matter and amounts to nothing more than a denial of the petition, no reply thereto is necessary.

5.   TRIAL—Instructions—Issues. It is not error for the court in his instructions to the jury to tell them the substance of what is alleged in the petition and answer.

6.   SAME. Where the instructions given by the court fairly and reasonably present for the consideration of the jury the issues joined by the pleadings and presented by the evidence, they are sufficient.

7.   MASTER AND SERVANT—Trial—Conclusion of Law or Matter of Fact—Instructions—Applicability to Case. The allegation in defendant's answer to the effect that, if it was liable for plaintiff's injuries, his right and defendant's liability were regulated by the federal Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913, secs. 8657-8665), stated a proposition of law and did not controvert any allegation made in plaintiff's petition, and hence no issue was made thereby, and the court did not err in failing to mention such allegation in his preliminary statement to the jury; there being no allegation in the answer that defendant at the time of the injury was engaged in interstate commerce, and the defendant having denied plaintiff was injured while in its employment or under its direction or control.

8.   TRIAL—Instructions—Error Cured by Subsequent Instructions. Where the court, preceding the numbered paragraphs of his instructions to the jury, purports to state to them the substance of the allegations contained in the petition and the answer and

fails to mention the defense of contributory negligence and assumed risk, which are contained in the answer, but gives and reads to the jury instructions requested by the defendant embodying such defenses, **held,** the error, if any, in failing to mention these grounds of defense in the preliminary statement, was cured by giving the defendant's requested instructions thereon.

9. **TRIAL—Instructions—Requests.** The trial court is not required to give a requested instruction which is uncertain or needs modification or qualification. If it is not good as requested it is not error to refuse it.

10. **MASTER AND SERVANT—Injuries to Servant—Actions—Instructions.** The primary test of the master's liability to the servant for injury sustained by the latter is the right of the master to control the servant at the time of the injury, and that the injury was received while the servant was doing the master's work or work directed by him, and was the result of negligence chargeable to the master; and in an action by a servant against the master to recover damages for an injury received upon a defective engine which the master told him to move, it is not error to refuse an instruction telling the jury that before plaintiff can recover he must show, by a preponderance of the evidence, that said engine was under the direct management, control, and supervision of defendant.

11. **APPEAL AND ERROR—Record—Questions Presented.** It is not always error to allow read to the jury, in rebuttal, certain answers in the deposition previously taken, of a witness who appeared and testified in person at the trial, but who had been dismissed and was absent and could not be obtained at the time the deposition was offered, and the action of the trial court admitting such answers, when the same were not set out in the brief of the complainant, will not be reviewed on appeal.

12. **APPEAL AND ERROR—Presenting Questions in Trial Court—Necessity.** An alleged error of the trial court complained of for the first time in the appellate court will not be considered therein.

13. **CORPORATIONS—Railroads — Injuries to Servant — Persons Liable.** Where two railway companies are incorporated under the laws of different states, but their tracks connect at the state line, and together form a continuous line of railway extending into both states, and both said companies use the same headquarters, roundhouse, and switch yards, and have the same managing and operating officers, and employ and use the same engineers and train crews, and use indiscriminately each other's engines, cars, and trains, and jointly operate through trains and train crews over both lines of road, and sell continuous tickets and carry passengers over both roads, and deposit the earnings

of both companies in one common fund received, kept and disbursed by a common auditor of both companies, and from which common fund the employees and expenses of both companies are paid, and the joint earnings and expenses are respectively credited and charged to each company in proportion to mileage owned by it of the aggregate contiguous lines of railway in the two states, and the same common managing officers of both companies have authority to employ, direct, control, and discharge, at will, the engineers and other employees of both companies, and all of whom may be required to work on either company's line of railway, **held**, in such case, an engineer so employed and controlled, who is injured by the negligence of one or both of such railway companies, while doing the work of both, may sue one or both companies in the courts of either state, and recover his damages, provided he is otherwise entitled to damages.

(Syllabus by the Court.)

*Error from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Action by J. W. Puckett against the Wichita Falls & Northwestern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Echols & Merrill, Hamon & Ellis,* and *C. C. Huff,* for plaintiff in error.

*Stuart, Cruce & Cruce,* for defendant in error.

BROWN, J. This action was commenced in the district court of Comanche county by defendant in error against the plaintiff in error to recover damages for personal injuries alleged by plaintiff below to have been sustained by him while in the employ of the plaintiff in error. A trial was had before a jury, which resulted in a verdict in favor of plaintiff below for $20,000. Defendant's motion for a new trial was overruled, and the case is here on error. In our discussion of the case we will refer to the respective parties in their relation in the trial court.

Plaintiff's petition alleges, substantially, that he was in the employ of the defendant as a locomotive engineer and was ordered by Davis, defendant's master mechanic, to take engine No. 136 out of defendant's roundhouse at Wichita Falls, Tex., that he got on the engine as directed and attempted to start it, and that certain connections with the lever, used for moving the engine, were broken, so that when he attempted to use the lever to start the engine the lever moved forward and threw him with great force against the front end of the cab. It is alleged plaintiff did not know of the alleged broken parts of the engine or of such defects, but that Davis, defendant's said master mechanic, did know of the same and failed to inform plaintiff thereof. It is further alleged that, as a result of said accident, plaintiff became paralyzed from his waist down, and suffers constant pain caused thereby, and is damaged $40,000. It is alleged that, but for such broken parts of the engine, the accident would never have occurred, and that it was due entirely to the defects mentioned, and to the gross carelessness and negligence of defendant's servants in failing to notify plaintiff of such defects, and that said accident and plaintiff's injuries were without any negligence on his part. Plaintiff prayed judgment for his alleged damages, for costs of suit, and for general and special relief.

Summons was issued and served on defendant's station agent in Comanche county, and on July 17, 1911, defendant entered its special appearance and moved to quash the summons. The motion to quash was overruled, the defendant excepted and was granted time to plead. On January 5, 1912, defendant filed its plea to the jurisdiction of the court, alleging as ground therefor that when the plaintiff received the injuries complained of, he was

not in the employ of defendant, but was in the employ of the Wichita Falls & Northwestern Railway Company of Texas. Plaintiff answered the plea to the jurisdiction, alleging the Wichita Falls & Northwestern Railway Company of Texas and the defendant railway company were one and the same company.

Defendant's plea to the jurisdiction was overruled, and exceptions thereto allowed, and defendant answered, admitting it was a corporation organized under the laws of Oklahoma and operating a railway in the State of Oklahoma. The answer otherwise denied generally the allegations in the petition and denied specially that plaintiff was ever an employee of the defendant railway company, and denied that defendant had ever maintained a round-house or railway yard at Wichita Falls, Tex., and alleged that it had no railway line or railway shops in Texas, and that, if plaintiff received any orders from Davis to take charge of engine No. 136 at Wichita Falls, Tex., said Davis was not master mechanic or agent of the defendant, and that said engine was not under its charge or control. The answer further alleges that on the date of the injury to plaintiff, he was under the supervision and control of the Wichita Falls & Northwestern Railway Company of Texas, which company was organized under the laws of that state, and operating a railway therein; that said Texas corporation was engaged in interstate commerce, and that plaintiff was working in the city of Wichita Falls, in the shops of said Texas corporation, and, at the time of his injury, was engaged in handling the engines and cars used and engaged in interstate commerce; and that, if defendant should be held to account for the injury to plaintiff, then his rights and defendant's liability were subject to the federal Employers' Liability Act. The

answer further alleged that if said engine No. 136 was broken or defective at the time plaintiff attempted to operate it, such defects were open and visible, and plaintiff assumed the risk of working with said engine and cannot recover on account of his injury. Plaintiff filed no reply to the answer.

Plaintiff in error's petition contains 18 assignments of error discussed by counsel under 24 general propositions, which, in so far as material, will be considered in the order presented.

First proposition:

"The court erred in overruling the plea to the jurisdiction of the court."

The contention is not tenable. This action is against an Oklahoma railway corporation, brought in the district court of Comanche county, Okla., through which defendant's railroad runs, and service of summons was had on its local agent in said county. The sufficiency of the summons and service is not questioned, and the trial court unquestionably had jurisdiction of the defendant.

The basis of the plea to the jurisdiction is that plaintiff's petition shows he was injured in the State of Texas, and it is claimed by defendant that at the time of his injury he was not in its employ nor under its direction or control, and was not injured by it or its servants. This, we think, is defensive matter, and not proper ground for defendant's plea to the jurisdiction of the trial court, and the allegations in the petition.

In support of the proposition, counsel cite the case of *Peterson v. Chicago, R. I. & P. Ry. Co.*, 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841. The Peterson Case was

brought in the Circuit Court for the Northern District of Texas against the Chicago, R I. & P. Ry. Co., an Illinois corporation, and it was alleged that the defendant railway company was engaged in carrying on its business in Texas in the name of the Chicago, Rock Island & Gulf Railway Company, a Texas corporation, alleged to be an auxiliary and agent of the defendant, and controlled by it. The action was to recover for the alleged negligent killing of Peterson while engaged as an engineer in defendant's employ at Chickasha, Indian Territory. Summons was served on the agent of the Texas corporation, and the defendant interposed a plea to the jurisdiction of the Texas court, denying partnership with the Texas company and the latter's agency, and claiming that the agent of the Texas company, upon whom service of summons was had, was not defendant's agent, and therefore the Texas court had acquired no jurisdiction of the defendant. There the issue was clearly one of jurisdiction, and after the evidence thereon was introduced, and, after reviewing the relations between the two railway companies, the United States Supreme Court held, that the Texas company was neither partner nor agent of the defendant, and that service upon the agent of the Texas company did not confer jurisdiction on the foreign corporation. The syllabus of the case is as follows:

"The ownership by a foreign railway company of a controlling interest in the stock of a domestic railway company which retains its own officers, has property of its own, and is responsible for its contracts and to persons with whom it deals, does not make the foreign corporation liable to service of process within the state on the theory that it is doing business therein through the agency of the domestic corporation.

"Service of process on an agent of a foreign corporation doing business within the state, in order to be valid, must be upon an agent representing the corporation with respect to such business."

The other authorities cited by plaintiff in error in support of this proposition, if anything, are less in point than the Peterson Case.

The matter set up in defendant's plea was clearly defensive. The allegations are, in substance, that defendant is an Oklahoma corporation, and, at the time plaintiff was injured, it was not doing business in the State of Texas, that plaintiff was not in its employ, was not under its direction or control, and was not injured by any negligence of defendant or any of its agents or employees, but that plaintiff was an employee of the Wichita Falls & Northwestern Railway Company of Texas, a corporation of Texas, having its principal place of business in Wichita Falls, at which place plaintiff alleges he was injured, and that none of the persons alleged in the petition as having employed plaintiff, or under whose direction or control he was at the time of his injury, were agents or employees of defendant. The facts alleged being purely defensive, defendant's purported plea to the jurisdiction of the trial court was properly overruled.

Second proposition:

"The court erred in overruling the objection to the introduction of any evidence against the plaintiff in error and erred in overruling the motion of plaintiff in error to be discharged."

Counsel for plaintiff concluded his opening statement to the jury as follows:

"The defendants will perhaps claim and we are advised the defendants will claim he was not injured by

the railroad, but that his trouble is what is called *locomotor ataxia.*"

Whereupon counsel for defendant objected:

"We object to the statement, because it is at variance with our pleadings and defense as read before the jury."

To which counsel for plaintiff replied:

"Well, then I will not make that statement."

Then counsel for defendant said:

"We have alleged he was not injured."

Thereupon plaintiff was called and sworn to testify as a witness in his own behalf, and counsel for defendant made the following objection:

"At this time comes the defendant and objects to the introduction of any evidence in this case and moves the court to discharge the defendant as a defendant in this case for the following reasons."

Defendant then stated substantially all the grounds set out in its plea to the jurisdiction and answer, and offered to introduce evidence in support of such grounds. The objection to the evidence and motion to be discharged were overruled by the court, and defendant excepted. We think the action of the court was correct and proper.

In effect counsel's objection to the introduction of any evidence was that plaintiff's petition did not state a cause of action against the defendant; defendant did not demur to the petition or object to the statement of plaintiff's counsel to the jury as to what he intended or expected to prove. In *Hogan v. Bailey*, 27 Okla., on page 18, 110 Pac., on page 891, this court held:

"Objection was made to the introduction of evidence for the reason that the petition failed to state facts sufficient to constitute a cause of action. This objection was overruled and is assigned as one of the errors in this court. 'Such an objection made at such a time and in such a manner is never favored by the courts.' *Mitchell et al. v. Milhoan,* 11 Kan. 617; *Barkley et al. v. State,* 15 Kan. 99. When objection is first taken to a petition by an objection to the introduction of evidence, the same 'should generally be overruled, unless there is a total failure to allege some matter essential to the relief sought, and could seldom, if ever, be sustained when the allegations are simply incomplete, indefinite, or conclusions of law.' *Mitchell et al. v. Milhoan, supra;* 4 Ency. P. & P. 757, and cases cited under note 1. In the light of this rule we have examined the amended petition filed herein, and, although a number of conclusions of fact and law are stated and more or less evidence pleaded, yet we cannot say that there is a total want of averment sufficient to sustain a verdict should one be rendered on evidence introduced under it."

Propositions 3 and 4 are to the same effect and may be considered together.

Third proposition:

"The court erred in overruling the demurrer to the evidence made by the plaintiff in error at the close of the trial."

Fourth proposition:

"The court erred in refusing to sustain the motion of the plaintiff in error to direct a verdict in favor of the plaintiff in error."

These propositions raise the question of the sufficiency of the evidence upon the trial to warrant a recovery by plaintiff, and hence involve the examination

of all the evidence or a sufficiency thereof to show plaintiff's right to recover from defendant in some amount.

We shall hereafter have occasion to refer somewhat in detail to the evidence, and, without stopping here to do so, it is sufficient to state there was competent evidence before the jury to show that plaintiff was injured substantially as alleged in the petition, and that, at the time of such injury, he was in the employ of defendant and under its direction and control, and was then and there engaged in the performance of his duty as such employee, and that his injury was the direct result of a defective engine used by defendant in the transaction of its business at its headquarters in the city of Wichita Falls, Texas, and which engine plaintiff was operating under the orders and direction of defendant's master mechanic, who had authority so to direct and control plaintiff; that such defects were not known to plaintiff, but were known or, by the exercise of ordinary care and caution, could have been ascertained by defendant and its servants whose duty it was to keep said engine in repair and in a safe condition to be operated. This court has repeatedly held that where there is competent evidence which, if true, reasonably tends to show plaintiff's right to recover, the defendant's demurrer to the evidence or motion for judgment should be overruled. See *Wm. Cameron & Co. v. Henderson*, 40 Okla. 648, 140 Pac. 404; *McCall Bros. v. Farley & Skinner*, 39 Okla. 389, 135 Pac. 339; *Frick-Reid Supply Co. v. Hunter*, 47 Okla. 151, 148 Pac. 83.

Fifth proposition:

"The court erred in overruling the seventh, eighth, ninth, tenth, eleventh, thirteenth and fourteenth paragraphs of plaintiff in error's motion for a new trial."

The paragraphs of the motion for new trial referred to in this proposition are not set out in plaintiff in error's brief, nor the substance thereof stated in connection herewith, and in counsel's argument on page 84 of his brief, he says:

"The matters set up in this proposition have been discussed under our first, second, third and fourth propositions, and what has been said is applicable here."

Having considered the propositions referred to, it is unnecessary to further consider these.

Sixth proposition:

"The judgment is void, for it is taking the property of the plaintiff in error for the act of another, as shown by the record, evidence, and proceedings in this cause, and is in conflict with the Constitution of the United States, in that it is the taking of the property of the plaintiff in error without due process of law."

This proposition states a proposition of law which must necessarily be determined from the whole evidence, which will be considered later.

Seventh proposition:

"Under the pleadings, the allegations of the amended answer were admitted, because defendant in error filed no reply, and, being taken as confessed, no evidence in contradiction thereof should have been admitted over the objection of the plaintiff in error, made at the beginning of the trial, and before defendant in error had produced any evidence."

The answer of defendant set up no new matter necessary for plaintiff to reply to; it was, in substance, a denial of the allegations in plaintiff's petition, and hence no reply was necessary.

Section 4753, Rev. Laws 1910, provides:

"When the answer contains new matter, the plaintiff may reply to such new matter, denying, generally or specifically, each allegation controverted by him."

In the case of *Terrapin v. Barker*, 26 Okla., beginning at the bottom of page 97, 109 Pac. at page 933, this court said:

"When the answer contains new matter, the plaintiff may reply to such new matter. Section 5642, Comp. Laws Okla. 1909. But when the answer amounts to nothing more than a denial, a reply is not necessary."

Eighth proposition:

"The court erred in stating what he considered the issues of the case to the jury, at the beginning of his instructions, for the reason that the court left out the issues of contributory negligence, assumed risk, and the demand of the plaintiff in error that the case be submitted under the federal Employers' Liability Act, all of which was the plea of defense in plaintiff in. error's amended answer."

In the charge of the court, preliminary to the numbered instructions therein to the jury, the court summarized the allegations contained in both the petition and the answer, and, in his statement of the allegations in the answer, did not mention the defense of contributory negligence or of assumed risk, or the allegation that the rights of plaintiff and the liability of the defendant were dependent upon the federal Employers' Liability Act, but in general instruction No. 4 the jury are told:

"You are further instructed that, before the plaintiff is entitled to recover herein, he must show by a preponderance of the evidence that he was injured in the way and manner set out in his petition, and that he

received such injury while in the employ of the defendant company * * * and that said injury was not the proximate result or contributed to by any negligence of the plaintiff."

Also in instruction No. 5 the jury are told:

"You are further instructed that if you find in favor of the plaintiff under the foregoing instruction, that is, that he received the injuries complained of while in the employment of the defendant company as a proximate result of the negligence of the defendant company and not on account of any negligence of his own which caused or contributed to said injury," etc.

We also find the court gave the jury special instructions 4 and 5, requested by defendant, as follows:

"No. 4. In this case the plaintiff claims that he is suffering from pain and paralysis of the lower limbs, which is incurable and permanent, and that such condition is the natural and necessary consequence of an injury which he claims to have sustained on the 26th day of December, 1909, while in the employment of the defendant as an engineer and which he claims to have been caused by the negligence of said defendant on that day; now, gentlemen of the jury, you are instructed that unless you believe from a preponderance of the evidence on the said 26th day of December, 1909, the plaintiff was in the employment of the defendant as engineer, and while so employed was injured by the negligence of the defendant, and that such injury, if any, that he received at said time was the natural and necessary cause of his present condition and present injury, then and in that event you cannot find for the plaintiff for any sum on account of permanent injury.

"No. 5. If you believe from a preponderance of the evidence that it was the duty of the plaintiff as engineer to inspect the Missouri, Kansas & Texas engine No. 136, upon which he claims to have been injured, for defects

and broken parts before attempting to operate same, and you further believe that if the plaintiff could by the use of reasonable diligence have discovered that the balance spring to same was broken and you further find that plaintiff did not inspect said engine for defects and broken parts before attempting to operate same and did not use reasonable diligence to discover whether or not the balance spring' was broken, but nevertheless undertook to operate said engine, that then, in that event, the plaintiff assumed the risk of danger and injury incident to him in the operation of said engine with a broken balance spring, and therefore cannot recover."

We think, therefore, if there was any error in the court's failure in his preliminary statement of the issues in the case to mention the defenses of contributory negligence and assumed risk, which we do not admit, the error was cured by the giving of special instructions above mentioned.

The court did not err in failing to include in its statement to the jury defendant's allegation as to the federal Employers' Liability Act. That allegation was merely the assertion of a proposition of law. The only allegations in the answer in anywise connecting plaintiff with the Employers' Liability Act read as follows:

"That he was at that time working in the city of Wichita Falls, Texas, in the shops of the Wichita Falls & Northwestern Railway Company of Texas; was engaged in handling engines and cars used and engaged in interstate commerce and that the rights of the plaintiff and the liability of the defendant are controlled by the act of Congress known as the Employers' Liability Act."

These allegations do not deny plaintiff's right to recover, and, at most, only stated a proposition of law dependent upon the evidence. They do not controvert any allegations in plaintiff's petition, and hence no issue

was thereby joined by the pleadings. In the case of *McMaster v. City National Bank of Lawton*, 23 Okla. 550, 101 Pac. 1103, 138 Am. St. Rep. 831, syllabus paragraph 3 reads as follows:

"Where the instructions given by the court fairly and reasonably present for the consideration of the jury the issues joined by the pleadings and presented by the evidence, they are sufficient."

In *Citizens' Bank of Wakita v. Garnett*, 21 Okla. 200, 95 Pac. 755, paragraph 2 of the syllabus, this court said:

"It is not error for the court to refuse to instruct the jury upon an issue that is not presented by either the pleadings or the evidence in the case."

If a preliminary statement of the court to the jury, made as part of the instructions to them by the court, is to be considered as such, then the rule announced in *Shuler v. Hall*, 42 Okla. 325, 141 Pac. 280, applies, viz., syllabus paragraph 2:

"In order for a party to avail himself of an alleged error in an instruction, it must appear from the record the instruction complained of was duly excepted to at the time."

The record fails to show defendant excepted to the statement referred to at the time the same was read to the jury. On page 481 of the record is what imports to be a copy of objections and exceptions made by defendant to the court's statement to the jury and to paragraphs 1, 3, 4, 5, 6, and 7 of the general instructions, and therein it is stated that such exceptions were allowed by the court. But it does not appear from any recital in this purported exception or objection when the same was

made with relation to the time the instructions of the court were given to the jury. It does not purport to be signed by the court, and the record does not indicate or show that it was ever presented to the court or called to the court's attention, and the date of its filing, if it was filed, is not shown in the record. The record shows over 100 pages of evidence introduced by both plaintiff and defendant following the page on which this purported exception is added. The record further shows, following the general instructions given by the court, in proper order, special instructions requested by the defendant, some of which were given and some were refused by the court, and shows exceptions of defendant to the court's refusal to give instructions, but it contains no mention of any exceptions to the general charge or to the preliminary statement by the court of the allegations in the pleadings.

It is not contended by counsel that the court's statement is not correct as far as it goes, and if, as we have stated, it is to be considered a part of the court's instructions, then the further rule announced by the court in the case of *St. L. & S. F. R. Co. v. Crowell*, 33 Okla. 773, 127 Pac. 1063, syllabus paragraph 2, applies:

"Where an instruction is correct as far as it goes, and it is urged by the party that under his theory of the case additional instructions should have been given, a reversal will not be had unless a supplemental instruction is requested by such contendent embodying such theory."

To the same effect, see *Chicago, R. I. & P. Ry. Co. v. Radford*, 36 Okla. 657, 129 Pac. 834.

Paragraph 5 of the motion for a new trial reads:

"Because the court erred in giving instructions to the jury numbered 2, 3, 4 and 5 and duly excepted to by the defendant at the time of the giving of the same."

But the motion contains no mention or reference to the omission complained of in the court's preliminary statement. The first specific mention or complaint of said · omission is found in the fifth assignment in the plaintiff in error's petition, and this court will not consider an error raised for the first time here.

In *Long Bell Lumber Co. v. Martin*, 11 Okla. 192, 66 Pac. 328, syllabus paragraph 3, it is held:

"A deed introduced by the defendant in error as exhibiting one step in his claim of title, purporting upon its face to be made by Harry C. C. Stiles, was in fact executed by Daniel F. Stiles, as 'attorney in fact.' The introduction was objected to generally at the time, upon the ground of 'incompetency, irrelevancy and immateriality.' But the objection thus made in general terms was not sufficient to call the attention of the trial court to the objection argued here; that is, that no authority was shown in Daniel F. Stiles, to execute the said deed as 'attorney in fact,' and since the attention of the court was not called to the point below, the objection will not be sustained here, having been specifically raised for the first time in this court."

Under the facts and circumstances above stated we think there was no reversible error committed by the court in the omission complained of in this proposition.

Propositions 9, 10, 11, 12, and 13 relate to alleged errors of the court in giving and refusing instructions, and may be considered together.

Ninth proposition:

"The following instruction designated by the court as instruction No. 4 is erroneous: 'You are instructed

that before the plaintiff is entitled to recover herein, he must show by a preponderance of the evidence that he was injured in the way and manner stated in his petition, and that he received such injury while in the employment of the defendant company and as a proximate result of the negligence of the agents and servants of the defendant company in furnishing the plaintiff, as locomotive engineer, a defective engine and locomotive that caused said injury, and that said injury was not the proximate result or contributed to by any negligence of the plaintiff; but in case you find against the plaintiff upon these issues you will then return a verdict in favor of the defendant.'

"(a). This instruction leaves out the necessary idea that at the time of the injury, it must be shown by a preponderance of the evidence that the defendant in error was under the actual control of plaintiff in error railway company and subject to its officers' commands.

"(b). This instruction assumes that a defective engine was actually furnished the defendant in error.

"(c). This instruction assumes that negligence was actually committed in furnishing the engines.

"(d). This instruction leaves out entirely the idea that defendant in error might have assumed the risk, even if a defective engine were furnished him."

Tenth proposition:

"The following instruction designated by the court as his instruction No. 5 is erroneous: 'You are instructed, further, that if you find in favor of the plaintiff under the foregoing instruction, that is, that he received the injuries complained of while in the employment of the defendant company, as a proximate result of the negligence of the defendant company and not on account of any negligence of his own, which caused or contributed to said injury, then you are instructed that under said circumstances the plaintiff would be entitled to recover against the defendant, and it would be your

duty to return a verdict in his favor and award him such a sum, as damages, as you may find would fairly and reasonably compensate him for the injuries he has sustained by reason thereof, and in arriving at the amount of his compensation you may take into consideration the loss of time, if any, he has sustained by reason of such injuries, the physical and mental pain, if any, he has suffered on account of same, and the diminished earning capacity, if any, that he has or may continue to suffer as a result of such injury.'

"(a). This instruction by intendment renews the previous instruction No. 4, and is subject to the same criticism.

"(b). This instruction does not permit of plaintiff in error the defense of assumed risk."

Eleventh proposition:

"The court erred in refusing to give to the jury special instruction No. 2 requested by the plaintiff in error, which is as follows: 'Before you can find in any sum for plaintiff and against defendant, you must find, by a preponderance of the evidence, that on the 26th day of December, 1909, and at the time of the injury claimed to have been sustained by plaintiff, that the Missouri, Kansas & Texas engine No. 136, upon which plaintiff was working at the time, was under the direct management, control, and supervision of the officers of defendant company, and unless you so find your verdict should be for the defendant, even though you find that plaintiff was in the permanent employment of the defendant at the time of the injury claimed to have been sustained by plaintiff."

Twelfth proposition:

"The court erred in refusing to give to the jury special instruction No. 1, requested by plaintiff in error, which is as follows: 'Gentlemen of the jury, you are instructed to find a verdict in this case in favor of the defendant and against the plaintiff.'

"(a). The plaintiff in error was not responsible for the injury.

"(b). No reply or denial to the matter pleaded in defense in the amended answer was ever filed."

Thirteenth proposition:

"The court erred in refusing to give to the jury special instruction No. 3, requested by plaintiff in error, which is as follows: 'In this case the plaintiff is entitled to recover, if at all, under the provisions of law regulated and set out in chapter ——, section ——, United States Statutes at Large, the same being an act of Congress known as the federal Employers' Liability Act (Federal Statutes Annotated Supp. 1909, p. 584), and the plaintiff's rights and the defendant's liability are determined, governed, and controlled by the provisions of said act, which I hereby define and give to you.' "

In plaintiff's argument under the ninth proposition, *supra*, the contention is that the court erred in instruction No. 4 in telling the jury that plaintiff must show by a preponderance of the evidence that "he was injured in the way and manner set out in his petition."

It is argued that the jury must have referred to the petition in order to compare the evidence given in the case, and to ascertain if it had been proved that plaintiff was injured in the way and manner set out in his petition, which, it is contended, would be reversible error, and the case of *Independent Oil Co. v. Beacham*, 31 Okla. 384, 120 Pac. 969, is cited in support of counsel's contention.

In the case cited the present Chief Justice, speaking for the court, said, quoting from page 393 of 31 Okla., page 972 of 120 Pac., as follows:

"It may be, however, that the jury was prejudicially influenced against the defendant by being permitted to

take with them to the jury room for their consideration, the second amended petition, answer, and reply, on which the case was tried. This often has been held to be error. *Myer v. Moon,* 45 Kan. 580, 26 Pac. 40; *Railway Co. v. Martin,* 59 Kan. 437, 53 Pac. 461; *Mt. Terry Min. Co. v. White,* 10 S. D. 620, 74 N. W. 1060; *De Wulf v. Dix,* 110 Iowa, 553, 81 N. W. 779; *Dassler v. Wisley,* 32 Mo. 498; *Blackmore v. Mo. Pac. Ry. Co.,* 162 Mo. 455, 62 S. W. 993. The pleadings, and particularly the petition, always set out the details of the injury with a harrowing particularity which is seldom entirely supported by the evidence, and the jury may have unconsciously been misled by the statements contained in the pleadings, instead of confining their deliberations to the evidence, as was their duty. With a verdict that satisfied the judgment of the court, and a record otherwise free from error, we would be loath to set aside the verdict upon the last ground, and will not do so if the plaintiff within fifteen days after the mandate is handed down files a *remittitur* for all in excess of $10,000."

But the reasons stated by Justice Kane why the pleadings should not be read by the jury do not apply in the case at bar, first, because nothing inflammatory is contained in the petition; and, second, it is not contended, and does not appear, that the jury were permitted to take plaintiff's petition with them to their room or had an opportunity to read the same. Having heard the petition read at the beginning of the trial, it may be presumed they remembered the allegations therein, and the court's charge summarized the allegations in both the petition and answer. Under these circumstances we think the error, if any, was harmless.

In the case of *Chicago, R. I. & Pac. Ry. Co. v. Bentley,* 43 Okla. 469, 143 Pac. 179, this court held (quoting from page 476 of 43 Okla., page 182 of 143 Pac.) :

"It is urged as a ground of reversal, under the second assignment of error, that the court in the instructions so fully summarized the allegations in the petition as to amount, practically, to allowing the jury to take the pleadings with them to the jury room. There is no merit in this contention. It is the correct practice, generally, for the court to state the issues of the case made by the pleadings to the jury. * * *"

In *Union Pacific Ry. Co. v. Sternberger*, 8 Kan. App. 131, 54 Pac. 1101, syllabus paragraph 3 reads as follows:

"It is not reversible error for the court in its instructions, after reciting to the jury the nature of the cause of action and the issues to be determined by the jury, and what it is necessary for the plaintiff to prove thereunder in order to recover, to add: 'The grounds of negligence claimed by the plaintiff are more fully set forth in the petition, to which you are referred.'"

In discussing the alleged defects in paragraph 4 of the instructions, counsel say:

"A portion of the instruction tells the jury that the plaintiff must show by a preponderance of the evidence that he received such an injury while in the employ of the defendant company. In so far as that instruction goes, we have no complaint, but it is defective and harmful to plaintiff in error for the reason that it leaves out the idea that at the time of the injury it must be shown by a preponderance of the evidence that the defendant in error was in actual control of the company's trains and subject to its officers' control."

What we have already said as to the duty of a party to request additional instructions is a sufficient answer to this argument.

Paragraph No. 5 of the court's instructions is also complained of and is copied as a part of plaintiff in error's tenth proposition. Counsel say this instruction by in-

tendment renews instruction No. 4, and is subject to the same criticism and does not permit of defendant below's defense of assumed risk. On examination of the instruction complained of we do not discover material error of which defendant could complain, or that, as a whole, it is subject to the criticism of counsel, except that it did not submit the defense of assumed risk. Without determining whether or not that defense was made an issue by the evidence, it was submitted to the jury in plaintiff in error's requested instruction No. —, heretofore referred to.

Under the eleventh proposition plaintiff in error contends the court erred in refusing to give defendant's special instruction No. 2, which is copied as a part of this proposition. This instruction was properly refused. By it the right of plaintiff's recovery was made to depend upon the single fact that the engine with which plaintiff was working at the time of his injury was then and there under the direct management, control, and supervision of the defendant's officers. We do not think such is the law. The test of defendant's liability was not the direct management, control, or supervision of defendant or its officers over the engine in question, at the time of plaintiff's injury, but it was defendant's employment of plaintiff and its management and control over him, with authority to direct him, and if at the time stated plaintiff was in defendant's employ, and under its management and control, and was directed by it, or by its officers having authority to give such direction, to get upon the engine and take it out of the roundhouse, and in obeying he was injured, it would be immaterial whether or not the engine was in defendant's control or under its management or supervision.

Twelfth proposition:

"The court erred in refusing to give to the jury special instruction No. 1, requested by plaintiff in error, which is as follows: 'Gentlemen of the Jury: You are instructed to find a verdict in this case in favor of the defendant and against the plaintiff.' "

Counsel for plaintiff in error say this proposition was discussed under the fourth proposition, to which they refer. We therefore refer to our answer to that proposition.

Thirteenth proposition:

"The court erred in refusing to give to the jury special instruction No. 3 requested by plaintiff in error, which is as follows: 'In this case the plaintiff is entitled to recover, if at all, under the propositions of law regulated and set out in chapter ——, section——, United States Statutes at Large, the same being the act of Congress known as the federal Employers' Liability Act (Federal Annotated Supp. 1909, p. 584), and the plaintiff's rights and the defendant's liability are determined, governed, and controlled by the provisions of said act, which I hereby define and give to you."

It is apparent from an inspection of this instruction that it was incomplete and too indefinite and uncertain to inform the jury to what it referred, and would have merely confused them had it been given them. In *Friedman v. Weisz*, 8 Okla. 392, 58 Pac. 613, in syllabus paragraphs 1 and 2, it is said:

"1. It is not error to refuse to give an instruction which is long, verbose, and uncertain as to its meaning, and which will tend to mislead and bewilder the jury.

"2. A court is not required to give an instruction which needs modifications or qualifications. If it is not good as requested, it is not error to refuse it."

The federal statute referred to is the act of Congress of April 22, 1908 (section 8657, U. S. Comp. Stat. 1913, vol. 4), which provides:

"Every common carrier by railroad while engaging in commerce between any of the several states or territories, or between any of the states and territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

The act relates only to liability of railway companies engaged in interstate commerce for injuries to their employees while they are engaged in interstate commerce. The answer of defendant denied it was engaged in interstate commerce, and denied plaintiff was its employee at the time of his injury, but specifically alleged that the Wichita Falls & Northwestern Railway Company of Texas was engaged in interstate commerce, and that plaintiff was its employee and engaged in handling engines and cars engaged in interstate commerce. The defendant's answer did not bring the case within the federal statute referred to; it was not sufficient to say that plaintiff, when injured, was an employee of the Texas company and engaged in interstate commerce without alleging he was likewise defendant's employee.

But if it be conceded that the defendant's answer brings the case within the federal statute (which we do not do), still the evidence does not do so. The evidence

shows that the engine in question was in the roundhouse at Wichita Falls, the headquarters of the Wichita Falls Route; that it was used by said route and the officers thereof, for all purposes, and it does not appear from the evidence for what purpose it was ordered out of the roundhouse, or for what it was to be used at the time of plaintiff's injury; in fact, the record fails to disclose that the engine was ordered out for the purpose of interstate commerce or that plaintiff, in attempting to operate it, was performing any duty relative to interstate commerce.

Fourteenth proposition:

"The judgment is void because the records and evidence and proceedings had therein are in conflict with chapter ——, section ——, United States Statutes at Large, the same being an act of Congress known as the federal Employers' Liability Act."

What we have said under the preceding proposition sufficiently answers this.

Fifteenth proposition:

"The court erred in permitting the deposition of one Williams to be read to the jury, the said Williams having been present in court and having orally testified in part."

Counsel for plaintiff in error state that the evidence complained of was introduced by plaintiff in rebuttal, after the witness had been excused by plaintiff's counsel, and it is contended this was error, the witness having previously testified in person at the trial. The evidence complained of is not set out in plaintiff in error's brief, nor the substance thereof, neither is there any reference to the record containing the same. The index to

the record and case-made does not disclose or indicate that this or any evidence was offered by plaintiff in rebuttal, and we will not search the record of over 600 pages for evidence which is not set out in the brief. See rule 25 of this court (38 Okla. x, 137 Pac. xi) requiring parties to set out in their briefs the full substance of testimony to the admission or rejection of which they object, stating specifically their objections thereto.

It may be further said that it is not apparent from this proposition or plaintiff in error's argument that the court erred in admitting such evidence. While ordinarily the depositions of a witness are not admissible while the witness is present in court, there are circumstances under which his statements made therein at a date prior to the trial would be admissible in rebuttal.

"The remaining propositions, 16 to 24, inclusive, are disposed of by counsel for plaintiff in error by the following statement on page 128 of their brief:

The remaining propositions relate to inadmissibility of certain testimony, and the legal effect of all the testimony. Throughout this argument we have had occasion to refer to some of the evidence here complained of, and have discussed its effect under the various propositions. We think it unnecessary to say more, as it would continue this portion of our brief to an unwarranted length."

These propositions will not, therefore, be further considered.

We have thus disposed of the several propositions of error set out in plaintiff in error's brief, but, in our consideration so far, we have noticed only such questions as we deemed properly presented and determinable under

these propositions. But we have not disposed of, nor considered, except incidentally, the primary issues upon which the case was tried in the court below, viz., the question of whether or not, at the time of plaintiff's injury (which appears to be conceded), he was in the employ and under the direction and control of defendant below, and whether his injury was the result of defendant's negligence. These issues were also presented by the petition in error for the decision of this court, and were argued by counsel for plaintiff in error under the first proposition, viz., the contention that the trial court was without jurisdiction of the case. We held such issue could not be raised by said plea. These issues, however, being properly before us upon sufficient assignments of error, the fact that counsel argued and urged their consideration under a wrong proposition will not deprive plaintiff in error of the right to the consideration and decision of this court upon the issues so involved.

In the brief of plaintiff in error, counsel state the controlling question in the case to be as follows:

"The case turns on the question whether or not Mr. Puckett was the servant of plaintiff in error at the time of his injury. * * * The underlying principle of the above cases is the power to control the acts of the servant at the time of the injury in the work that is being done. We have never contended for anything else. It is the supreme test. Those cases cited where more than one corporation was held responsible for the injury, the injured party had either been employed by one to do the common work of all, to which all assented, contributed pay or accepted the benefits of the labor done for the common benefit of all; or where all had employed the injured party in common to do the common work of all. In any case the power to control at the time of the injury in the work being done remains in all, and all

are liable, and the principle remains the same. Now how can this common employment be established by the evidence sufficiently to invoke joint liability? It occurs to us that there are two ways that this may be shown by the evidence:

"First. As we have indicated above, the cases show that common employment means that one of several wholly dissociated corporations may employ a person to do the work of several, itself included; and if this is assented to by all, then all become jointly and severally liable for any dereliction of duty of any particular one of the otherwise dissociated corporated corporations, provided at the time of the injury the injured person is engaged in the performance of the common work; and likewise all of such dissociated corporations may employ such person at the outset, for the common purpose, and joint and several liabilities attach and remains thereafter while such person is engaged in the common work of all. When the evidence shows either of the above state of facts we have common employment of dissociated corporations, and the legal consequences of joint and several liabilities.

"Second. The fact of common employment may be shown by evidence that the corporations so employing are not dissociated but are partners, or a unity."

Let us apply these rules to the evidence in this case. The record discloses the following facts: The Wichita Falls & Northwestern Railway Company of Texas and the Wichita Falls & Northwestern Railway Company, the defendant, were each promoted by J. A. Kemp and Frank Kell, of Wichita Falls, Texas. The Texas company was incorporated September 26, 1906, under the laws of Texas, and the defendant company was incorporated under the laws of Oklahoma, October 5, 1906. Kemp & Kell originally owned most, if not all, of the stock of both companies. Both companies were organized with J. A. Kemp as president; Frank Kell, vice president and general man-

ager, and Wylie Blair as secretary; W. S. Hays, treasurer; Thomas R. Orth, superintendent, and C. C. Huff, general attorney for each of said companies.

The Oklahoma corporation, the defendant herein, was promoted, incorporated, and organized for the purpose of co-operation with the Texas corporation in the construction of a continuous line of railway from Wichita Falls, Texas, to points in Oklahoma.

The Wichita Falls & Northwestern Railway Company of Texas constructed its track from the city of Wichita Falls, Wichita county, Texas, north to the boundary line between Texas and Oklahoma, from which point the Wichita Falls & Northwestern Railway was constructed north into Oklahoma, the rails of the two companies connecting at a point near the middle of the bridge over Red river, designated as the boundary line between the two states, and together these railroads constituted one continuous line from Wichita Falls to cities and towns in Oklahoma.

The two lines of railways mentioned were included, with others, in a system of railroads controlled by J. A. Kemp and Frank Kell, in which they owned most, if not all, the stock. This system was known as "The Wichita Falls Route," which name was labeled on the cars of both companies, and such cars used and operated over the lines of both companies. The Wichita Falls Route system continued and existed at the time of the plaintiff's injury in December, 1909, and, so far as the evidence in this case discloses, is still in existence, with the personnel of its principal and managing officers practically the same, except that R. J. Sullivan is the present superintendent.

Thomas R. Orth, a witness for defendant, testified he was the superintendent of both the Texas and Oklahoma corporations from the beginning of the construction of these lines of railway, and was such at the time of the injury to plaintiff, and that it was his duty to look after the property in general of both companies, and the operation of trains and handling employees, and that as such superintendent he hired the employees of these companies or had it done, and had the direction and management of the trains of both companies; that on the date of the plaintiff's injuries, he was on duty and had the general supervision and control of the roundhouse and yards at Wichita Falls, and of the men therein; that he was the head man as far as control was concerned, and in the operation and manipulation of the trains, engines, crews, and men; and that, on said date, Missouri, Kansas & Texas engine No. 136 was under his control as such superintendent, and that plaintiff, Puckett, while working on engine No. 136, was under witness' supervision, and that he could have discharged plaintiff on that day, if occasion to do so had arisen. This engine No. 136 had been leased by the Texas company from the Missouri, Kansas & Texas Railway Company at $8 per day, and was used in that company's switch yards in Wichita Falls, and sometimes sent over the connected lines of the two companies, into Oklahoma.

Witness stated that he knew plaintiff Puckett at the time of his injury, and that he afterwards discharged him or had it done, and that Puckett afterwards came to him to get reinstated in the company's employment. Witness stated there was no engine inspector at the roundhouse at the time of the plaintiff's injury. On cross-examination witness Orth testified that if any engineer had re-

fused to work on both the Texas and Oklahoma ends of the railroad, he would have discharged him; that he had complete authority as manager to do what he pleased, relative to the operation of trains and management of employees, and never sent one crew out to operate a freight or passenger train from Wichita Falls terminals to the end of the Texas company's track only, and another crew to take the train from that point into Oklahoma, unless something was wrong with the bridge over Red river, and that the trains and crews always went through from Witchita Falls to points in Oklahoma without change or interruption. He stated that in December, 1909, his salary was $250 as superintendent for the two companies, the Wichita Falls & Northwestern Railway Company of Texas and the Wichita Falls & Northwestern Railway Company of Oklahoma, and that he was paid monthly in one check. Witness says he never heard of any contract between the Texas and Oklahoma corporations under the terms of which the respective lines of railroad were run or operated; that W. M. Davis was master mechanic at Wichita Falls, at the time plaintiff was injured, and his duties extended to the terminal work of the Wichita Falls & Northwestern Railway Company of Oklahoma, and that of the Wichita Falls & Northwestern Railway Company of Texas, and that the master mechanic was foreman of the roundhouse.

M. M. Murray, also a witness for defendant, testified that in December, 1909, he was auditor for the Wichita Falls & Northwestern Railway Company of Texas, the Wichita Falls & Northwestern Railway Company, and Wichita Falls & Southern Railway Company, and was jointly employed by these three corporations. Witness stated the Texas company was chartered under the name

of Wichita Falls & Northwestern Railway Company of Texas, and the Oklahoma corporation under the name of Wichita Falls & Northwestern Railway Company, in order to show the distinction between the two corporations; that he had been the joint employee as auditor of both companies from the date the Oklahoma corporation was organized; that it was his duty as such auditor to keep the accounts and books of both companies, and all accounts, books, and records of both companies, and all accounts, books, and records of each company, were under his supervision and control; and that as such auditor he handled the receipts and disbursements of both companies and issued checks, which had to go through his department, and was one of the heads of the department of the Oklahoma corporation; that as auditor it was his duty to know, and he did know, the properties owned by the respective companies named; that in 1909 the Wichita Falls & Northwestern Railway Company of Texas owned a line of road and track from Wichita Falls to the state line at Red river, and owned the roundhouse at Wichita Falls, and the Oklahoma company owned the property north from the connection with the Texas property, on the Red river bridge, including railway stations, buildings, right of way, tracks, section houses and all appurtenances, including the station at Devol, in Comanche county, Okla.; that the Texas and Oklahoma railways sent crews and trains over both lines of railway without interruption or stoppage at the point of intersection at the state line, there being no change of crews or cars there; that there was no written agreement between the two companies as to the operation and management of the trains and crews running over their lines, but the understanding and arrangement between them was to operate

and run these trains over the two lines of railroad without interruption, and the earnings of both companies were placed in one common fund, and the expenses borne by each company according to the number of miles each owned in the continuous track of the two companies.

Witness stated that, as auditor, he paid employees of both companies, and nearly every month he would go up the line into Oklahoma and pay the employees of the Oklahoma corporation. On cross-examination this witness stated that the Texas line of railway was 17.2 miles long, and he thought that, at the time of giving his testimony, there were practically 300 miles on the Oklahoma side; that as joint auditor of the roads mentioned, his salary was $200 a month; that he was paid in one check at the end of the month, which check was either drawn by himself or one of the clerks in his office, on the common fund of both companies; that the coaches which ran from Wichita Falls into Oklahoma were labeled "The Wichita Falls Route"; and the engines and trains were used interchangeably; that checks given to local employees in Oklahoma were drawn on the common fund of the two companies, but were charged to the Oklahoma company, while the operating expenses were paid out of the common fund and charged to the respective companies according to a mileage basis. Witness stated that after the construction of the Oklahoma end of the railroad he never knew a conductor, brakeman, fireman, or engineer to be employed simply to run from Wichita Falls to the Oklahoma line and stop, and that coupon tickets were not used on these two roads.

This witness said it was his duty at the end of each month to make a report to the Railroad Commission of

Texas of the revenues and operating expenses of the Texas corporation and make an annual report at the end of the fiscal year showing the total revenues and expenses of said company, and he was required to make similar reports to the Corporation Commission of Oklahoma, as to the Oklahoma corporation, which he did, and that, in these reports, the earnings of the respective corporations were stated upon a mileage basis.

C. C. Huff, the general attorney of both the Texas and Oklahoma railway companies, testified that the trainmen and other employees of the Wichita Falls & Northwestern Railway Company of Oklahoma were selected by the superintendent, who resided at Wichita Falls, Tex., and who was also superintendent of the Texas railway company, and who selected the employees of that company, and that said superintendent had authority to discharge employees on these lines; that the employees of the Oklahoma company and the Texas company were paid at the same time and in the same manner, from Wichita Falls, and the pay checks issued by the same officer. Witness says "the Wichita Falls Route is a system of railroads controlled by Messrs. Kemp and Kell, and includes the Wichita Falls & Northwestern Railway Company, which is the Oklahoma corporation, and the Wichita Falls & Northwestern Railway Company of Texas; that the records and books of the Wichita Falls & Northwestern Railway Company of Oklahoma are kept at the same place and by the same employee who keeps the books for the Texas company; that the Texas company only owns 17.2 miles of railroad and it could not maintain itself and have its offices, and maintain its own train crews, unless it had some other connections whereby it could divert tonnage and receive tonnage; therefore the owners of the

Texas road associated with themselves certain parties who could furnish money, and, in order to have a railroad built, built the line in Oklahoma, and, under an economical administration of the affairs of each railroad, the same officers and the same employees are used to operate trains on both these lines." Witness stated that the switch yard at Wichita Falls, where plaintiff was injured, was the same yard in which all trains coming over the lines of the defendant Wichita Falls & Northwestern Railway Company are switched.

The defendant below introduced in evidence plaintiff's written or printed application to W. M. Davis, master mechanic of both these companies in question, for employment as engineer under date of October 9, 1909. The application was headed, on the first line, "The Wichita Falls Route"; and following were "The Wichita Falls & Northwestern Railway Company of Texas," "The Wichita Falls & Northwestern Railway Company," "The Wichita Falls & Southern Railway Company."

Plaintiff, Puckett, testified that about October, 1909, he was employed by W. M. Davis, master mechanic, as engineer for the Wichita Falls & Northwestern Railway Company, and that as such engineer and employee his run lay between Wichita Falls, Tex., and Frederick, Okla., over the continuous line of the two companies. Puckett said he received orders from Davis, the master mechanic, both at Wichita Falls and at Frederick, Okla., and he never knew there were separate companies in Texas and Oklahoma until after he was injured; that the master mechanic had charge of the roundhouse, and, at the time of his injury, he was directed by him to take the engine, upon which he was injured, out of the roundhouse, which

he was attempting to do at the time of his injury. Puckett further testified that from the date of his employment to the time of his injury he continued in defendant's employment, and that on the 26th day of December, 1909, Missouri, Kansas & Texas engine No. 136 was being operated and used by defendant at Wichita Falls, Tex., and that Davis, to whose orders plaintiff was subject, told him to get on said engine and take it out of the roundhouse, and, in order to start the engine forward, he raised or released the "dog" which held the reverse lever, so that he might let the lever go forward and start the engine in motion; that, when he released the "dog," the lever flew forward with much force and carried him with it, throwing him down and against the cab with great force; that the manner in which he attempted to move the engine was the usual and customary method used by skillful engineers in operating engines, and that what he did at the time of his injury was done in a careful and skillful way. He further stated that what was known as the counterbalance spring of the engine was broken at the time he got on and attempted to take the engine out of the roundhouse; that the usual purpose and office of such spring is to assist in lifting the weight of the links underneath the engine, and that the same was the customary and proper method of operating an engine, and that when in good order, when the lever is released so as to go forward, said spring resists the weight falling on the lever; but when the spring is broken, as it was at the time stated, and the lever is released, the weight of the links, which is 500 or 600 pounds, falls upon the lever and throws it forward with great force and rapidity, and at the time of his injury, when the "dog" was released so that the lever could be brought forward, the entire weight of the links was

thrown upon the lever and it went forward with such force that he was unable to turn it loose. Plaintiff further testified that at the time he got on the engine to take it out of the roundhouse, he did not know the counterbalance spring was broken, and if he had he would not have attempted to move the engine, but, on the contrary, he believed the engine to be in good, safe condition, and therefore attempted to obey the orders of the master mechanic and take the engine out; that said defect in the engine could have been ascertained by inspection of the engine by the master mechanic or by other employees of the defendant whose duty it was to inspect and keep the engines in repair, but that defendant's master mechanic and its servants and employees, whose duty it was to inspect the engine, carelessly and negligently failed to examine and inspect the engine in question, at the time of and before plaintiff was directed to remove the same, and negligently failed to inform him of the broken condition of the engine or of any defects therein, and that the failure of defendant's servants to inspect said engine and repair the same, and their failure to inform plaintiff of the defective condition thereof, and the broken condition of the spring mentioned, all resulted in plaintiff being thrown down against the cab in the manner stated.

In short, it appears from the evidence: That the Wichita Falls & Northwestern Railway Company of Texas and the Wichita Falls & Northwestern Railway Company were incorporated with the same general officers, with a view of co-operation of the Oklahoma company with the Texas company in the construction and operation of a continuous line of railway from Wichita Falls, Tex., to points in Oklahoma, and that, at the time of plaintiff's injury, said companies had one set of officers

from president down. That these companies and other railway companies, controlled by J. A. Kemp and Frank Kell, were known and operated as the "Wichita Falls Route," which name was labeled on the cars of both companies. That the earnings of both companies went into one common fund and were deposited in the same depository in Wichita Falls, the headquarters of "the Wichita Falls Route." Each employee of the route system was employed by the same person and received his salary in one check drawn by the same person on the common fund of the two companies. Each train crew, including engineers, was under the management and control of the same persons at Wichita Falls, and engineers, trains, and train crews were sent indiscriminately from Wichita Falls over both lines of road, without change or interruption, into Oklahoma. That since the construction of the Oklahoma line of railway, no train was ever sent to run out of Wichita Falls over the Texas road which did not go over into Oklahoma, unless something was wrong with the railroad bridge over Red river, the boundary line between said states. That the continuous line of railroad operated by these two companies consists of about 17 miles in Texas and a much greater distance in Oklahoma, and the operating expenses, including the salaries of engineers and train crews, were borne by the two companies in proportion to the number of miles of railway situated respectively in Texas and Oklahoma.

Thus the Oklahoma line contributed the greater portion of such expenses. The tickets for passenger fares were card tickets and were sold indiscriminately from points on the Texas line to points on the Oklahoma line, and *vice versa,* and the proceeds thereof likewise turned into the common fund referred to. Plaintiff, Puckett, was

employed by Davis, the master mechanic, for the Wichita Falls Route system, and did not know until after his injury that said system included more than one railroad or corporation; and it appears that during his employment he received orders from Davis, the master mechanic, both in Wichita Falls and at the end of plaintiff's run at Frederick, Okla. Plaintiff's usual run extended from Wichita Falls, Tex., to Frederick, Okla., and at the time he was hurt he was ordered by the master mechanic to take a defective engine out of the roundhouse at Wichita Falls, which engine was used for the purposes of the Wichita Falls Route system. The evidence fails to show whether the engine on which plaintiff was hurt was ordered out and was being taken out of the roundhouse by plaintiff for the purpose of switching the Oklahoma company's cars in the switchyards, or for the purpose of being sent from Wichita Falls into Oklahoma, or for what purpose it was ordered out. Plaintiff's application for employment was upon a blank, headed "Wichita Falls Route," and was addressed to W. M. Davis, master mechanic, and throughout the application "the company" was referred to as the party with whom employment was sought. When plaintiff was discharged after his injury, he was discharged by the superintendent of Wichita Falls Route system.

In other words, plaintiff made application to defendant's master mechanic for employment on the Wichita Falls Route system, which included the defendant company, and he was employed and worked continuously to the date of his injury for said route, much of the time on defendant's road, and in the roundhouse and switchyards in which defendant's engines were kept and its switching done and of which defendant's master mechanic was fore-

man.  Plaintiff's salary was paid out of the common fund, most of which was contributed by defendant, and which was kept by defendant's treasurer at defendant's headquarters; plaintiff's salary check was drawn by defendant's auditor and bookkeeper, and during his employment plaintiff was under the direction, control, and supervision of defendant's master mechanic and superintendent, at times receiving his orders at both Wichita Falls, Tex., and Frederick. Okla., from these officers, and when he was injured he was discharged by defendant's superintendent. It also appears from the testimony of Mr. Huff, general attorney of the Wichita Falls Route and all railway companies constituting said system, that J. A. Kemp and Frank Kell, the president, vice president and general manager, and stock owners of the Wichita Falls & Northwestern Railway Company of Texas, were the promoters of the defendant railway company, which was incorporated with Kemp and Kell as president, vice president and general manager, respectively, and other subordinate officers, the same as in the Texas corporation, and that the defendant company was incorporated for the purpose of co-operation between it and the Texas company in the construction and operation of a continuous line of railroad from Wichita Falls, Tex., to points in Oklahoma, "whereby it could divert tonnage and receive tonnage."  These two companies have continuously co-operated in the joint operation of these two lines of railway since the organization of the defendant company.

The case of *Peterson v. Chicago, R. I. & P. Ry. Co.,* 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841, is cited by plaintiff in error as the leading case relied on in support of the contention that the facts of the case at bar are

insufficient to establish liability of defendant for plaintiff's injuries.

The facts in that case, in some respects, resemble those in the case at bar, but on the controlling issues in the two cases the facts are very dissimilar. In that case, as shown in this, there was a continuous line of railway extending from Texas into the Indian Territory (now Oklahoma), and the Chicago, Rock Island & Gulf Railway Company, a Texas corporation, owned the line south of the Texas boundary line, and the Chicago, Rock Island & Pacific Railway Company, a corporation of the State of Illinois, owned a road north of the Texas boundary, and through trains were run by the same crew over both lines of railway.

In the Peterson Case it was shown that the respective companies were separate and independent corporations, and that each company separately employed, managed, and controlled its employees and separately maintained its own road and business, and that the through trains and crews, after they crossed the line into Texas, were under the exclusive management and control of the Texas company, and before entering Texas they were under the control and management of the Illinois company.

In the Peterson Case it appeared that the president of the Texas corporation was general attorney of the defendant company, and the trainmaster of the Gulf company, it appears, was assistant trainmaster of the defendant company, but they were paid by each company separately for the work done by them for it. The names of some of the employees of one company appeared upon the pay rolls of the other, but they were paid by each company separately for the services rendered on its line. The evi-

dence in the case at bar shows that no note was taken of the time or services of engineers or other train crews rendered on the respective lines of railway. When these crews were not on their through run they were at the headquarters of the two companies at Wichita Falls, and were required by the common superintendent of both companies to work where and when their labors were needed and were paid salaries without regard to the time they worked on the respective roads, and were paid from a common fund of the earnings of both roads upon a mileage basis, and if, perchance, an employee had spent half or all his time during the month working at Wichita Falls, or on the Texas line, his expenses were nevertheless paid from the common fund, jointly earned by both roads, and, as the Oklahoma end was much the longer, it is reasonable to presume its portion of the salary of such employee was the greater. In the Peterson Case it also appeared that certain parties were members of the board of directors of both the Illinois and the Texas corporations and there may have been some other similar officers of the two companies, but in all such cases, the salaries of such joint employees were paid by each company separately for the work or labor performed for it, which is shown by the following statement in the opinion of the court regarding that case, viz.:

"It is a fact that both companies had common agents and employees to a certain extent, but the record shows that such employees were paid in proportion to the business done for each company."

And much stress seems to have been laid by the court on the fact just stated. There are other equally pertinent facts which distinguish the Peterson Case from the case at bar.

Another case relied on by plaintiff in error is *Stout v. Sioux City & Pac. R. Co.* (C. C. Neb.) 8 Fed. 794. In that case, however, the court had under consideration the question of the sufficiency of the service on a local agent of the domestic corporation to confer jurisdiction on the foreign corporation, and held the mere fact that the two companies had the same general officers and stockholders did not constitute them the same company, and that service upon the local agent of the one corporation did not confer jurisdiction on another separate and distinct corporation. We do not hold in the case at bar that the mere fact that the two companies in question have the same officers constitutes one liable for injuries to such common officers or employees. Such facts are very persuasive, however, when taken in connection with the other facts in the case, namely, the joint and common employment, common labor, common and joint control, management, and supervision. One party may consistently be an officer and manager of two separate and distinct corporations. Such corporations may also have common employees. Such separate companies may have the sole and exclusive control and direction of the common employees while engaged in performing their work. In other words, as stated by plaintiff in error's counsel, both employment and the right of direction and control are necessary to fix liability.

In *Smith v. St. L. & S. F. Ry. Co.*, 85 Mo. 418, cited by plaintiff in error, 55 Am. Rep. 380, the trainmen and trains on a through line of railroad were under the exclusive control and management of the respective companies owning said roads while they were on such company's road.

The case of *Atwood v. C., R. I. & P. Ry. Co.* (C. C.) 72 Fed. 447, also cited by plaintiff in error, is also a case

where two distinct corporations owned continuous lines of railway over which through trains were operated, but each had the exclusive control, management, and direction of the trains and crews while on its road. Similar relations existed in the case of *Byrne v. Kansas City, Ft. S. & M. R. Co.*, 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693, cited by plaintiff in error.

The case of *Garven v. C., R. I. & P. R. R. Co.*, 100 Mo. App. 611, 75 S. W. 193, cited by plaintiff in error, announces the rule as we have just stated, as follows:

"It is undoubtedly true that where some third person is injured by the negligence of the servants and agents of the master, yet if, at the time of the act of negligence, such servants are under the control of another, the master of the servants cannot be held for such negligence. The authority at the time to control is the test."

An examination of the other numerous cases cited by plaintiff in error shows, we think, that none of them are in point or support plaintiff in error's contentions in this case.

The principles which fix the defendant's liability in this case are not limited to modern decisions. In the early case of *Bostwick v. Champion*, 11 Wend. (N. Y.) 571, the proposition of the liability of joint operators of a continuous transportation line for injuries on any part of the line is very clearly stated. The case involved the liability of joint operators of a continuous stage line over roads owned separately by the operators. The court said:

"It is clear in this case that all the proprietors have a community of interest in the profits, and share in them in proportion to the money, labor, and skill brought into the business. The proceeds from the entire route are thrown into a common fund and divided. Each has the

benefit of any peculiar or superior advantages which may appertain to one portion of it over another; and it was well said by Mr. Justice Bayley that the 'horses and driver are found by one to do the work of all and for the benefit of all' under such circumstances.  Each sharing in the profits of the whole route, and of course of each section of it, it is not only just, but in accordance with the well-settled principles of law, to hold all responsible for the faithful discharge of their duty, and to respond in damages for any injury which happens from the negligence or unskillfulness of any of the proprietors or their servants."

The case of *G., C. & S. F. Ry. Co. v. Dorsey,* 66 Tex. 148, 18 S. W. 444, was in many respects like the instant case.  The facts in that case are substantially as follows:

"A. S. Dorsey sued the Gulf, Colorado & Santa Fe Railroad Company for personal injuries sustained while coupling cars in a certain railroad yard known as the union yard at Rosenburg Junction.  By amendment the plaintiff made the Galveston, Harrisburg & San Antonio Railway Company a codefendant.  The yard at Rosenburg Junction was jointly used by the two defendant companies and by the New York, Mexican & Texas Railway Company.  Each company contributed to the maintenance of the yard and each had the full privileges.  Plaintiff was employed as night switchman by the Gulf, Colorado & Santa Fe Railway Company, and it was his duty to act for all tracks and trains in the union yard.  Verdict and judgment for plaintiff against the Gulf, Colorado & Santa Fe Railway Company for $15,000.  Defendant appealed and case affirmed.

"Robertson, J.  The plaintiff, when injured, was in the employment and pay of the appellant.  He was coupling cars of the other defendant on a part of the yard originally belonging to that defendant, but he was doing what the appellant employed him to do.  He was the appellant's servant, though he may have been also the servant of the other defendant.  In *Railway Co. v. McClana-*

*han,* reported in 3 Tex. Law Rev. 324, McClanahan, in loading a train belonging to another company, was injured by a defect in the cars, but his master was held liable. In that case the train was on the master's road, but the defect was not in the road. In this case the defect was in the train and the track of the other defendant. The track, however, formed a part of the yard used in common by the three companies, whose lines intersect at Rosenburg. One company furnished the engine crew, another the fuel for the engine, and the plaintiff was furnished by appellant, all for the service of the several companies in the union yard. Every part of the yard was used in manipulating the trains of each company, as the occasion required. Neither of the defendants, each possessing peculiar facilities for making such proof, offered any evidence of the contract between the three companies respecting the common yard. Their duties could only be inferred from the use of the premises. About this use there was no conflict in the evidence. The track on which the plaintiff was injured, under the arrangement between the companies, as evidenced by the use made of it, was as much controlled and owned by appellant as by the other defendant. * * * The appellant is the last of the three masters that could escape liability. It hired the plaintiff; its yardmaster directed his labors. Between it and him the relation between master and servant was created by express contract. That relation between him and the other companies arises by inference from the service and from the connection of the companies, *inter se.*"

The case of *Wisconsin Cent. Ry. Co. v. Ross,* 142 Ill. 9, 31 N. E. 412, 34 Am. St. Rep. 49, so strongly resembles the case at bar, both in facts and principles, that a lengthy quotation from it will be instructive. The Supreme Court of Illinois states the facts of the case as follows:

"The evidence tended to show: That the deceased was employed by the defendant, or by the Wisconsin Central Line. That the Wisconsin Central Line was not a

corporation, but was a name given to an association of five or six railroad corporations, having running and traffic arrangements with each other, and having some sort of an arrangement, under a lease or contract, or otherwise; with the railroad company owning the tracks called the 'Panhandle Y,' by which the trains and cars of the association were permitted to pass over said tracks. That this association of corporations advertised itself as the Wisconsin Central Line. That the appellant company was one of the corporations so associated under said name, as it is admitted to be by counsel for appellant in the following words used in their brief: 'The evidence tended to show that the railroad of appellant formed part of the route so advertised.' That the deceased was killed, while engaged in transferring a train of cars belonging to the Wisconsin Central Line, over the 'Panhandle Y,' as the servant and employee of the corporations forming that association, and that the cause of his death was the defective character of the rails and ties upon the tracks of the 'Panhandle Y,' over which the train in question was passing. Upon all these questions of fact the judgment of the appellate court, affirming that of the circuit court, is final and conclusive so far as we are concerned."

After stating the above facts the court said:

"Under the facts thus stated, was the appellant liable for the death of the appellee's intestate? It is claimed that the appellant is not liable, because the defective tracks did not belong either to the appellant or to the Wisconsin Central Line. But the following propositions are well established both by reason and authority: A railroad company is responsible for accidents caused by defective tracks. It is bound to exercise due care to safely carry the passengers and property intrusted to it. It is therefore its duty to see to it that the road, which it uses for such transportation, is safe and in good repair, whether such road is owned by it or not. If it uses the track of another company for such purpose, it is liable for damages to its passengers or freight by reason of defects in

the road of such other company so used by it. This rule applies as between the railroad company and its employees. There is no evidence that the deceased had any knowledge of the defects in the track. Where the employee of a railroad company is directed to use the road of another company in the business of his employer, he has the right to treat such road as the road of the company employing him; and every railroad company, whose employees use the road of another company under its direction or for its benefit, owes it as a duty to such employees to see that such road is not in a condition which will unnecessarily endanger their lives or limbs. The rule is thus stated in Wood, Mast. & Serv. (2d Ed) sec. 357, p. 735: 'A railway company running its trains over the track of another railway is liable to its servants for defects therein, when it would be liable if the injury resulted from defects on its own tracks.' To the same effect are: *Stetler v. Railway Co.*, 46 Wis. 497, 1 N. W. 112, and cases there cited; *Railroad Company v. Kanouse*, 39 Ill. 272 [89 Am. Dec. 307]; *Elmer v. Locke*, 135 Mass. 575; *Snow v. Railroad Co.*, 8 Allen [Mass.] 441 [85 Am. Dec. 720]. We are therefore of the opinion that the liability of the appellant cannot be defeated upon the ground that the road in use at the time of the accident did not belong to the appellant, or to the Wisconsin Central Line.

"Equally untenable is the objection that the deceased was not in the particular service of the appellant alone. What was the precise nature of the association of the corporations operating under the name of the Wisconsin Central Line does not appear. But it appears that the deceased, and several of the witnesses who testified, were employed by that association. The corporations acting together paid the wages of the deceased. Such wages constituted a part of the expenses of operating their roads. They were therefore sharing the expenses of such operation, whether they shared the profits or not. They owed to each of their employees the duty of seeing that the track, which they required him to use, was safe and in

good repair. The track in question was used for their joint benefit and in their joint service. They were, therefore, jointly liable for any injury to their employee, resulting from a defective track, for the use of which they were jointly responsible; and they were also severally liable. 'If several persons are jointly bound to perform a duty, they are jointly and severally liable for omitting to perform or for performing negligently.' *Machine Co. v. Keifer*, 134 Ill. 481, 25 N. E. 799 [10 L. R. A. 696, 23 Am. St. Rep. 688]. Partners are jointly and severally liable for torts committed in the course of the partnership business. Story, Partn. (7th Ed) secs. 166, 167. It is true that, in this case, the suit is brought against one member only of the association, and not against all; but all the members need not be sued, though all may be jointly liable. The law treats all torts as several as well as joint. The injured party may, at his election, sue all the partners, or any one or more of them, for the tort. *Id.* sec. 167. The rule is not confined to partnerships, but extends to all cases of joint torts at the common law, whether positive or constructive. *Id.; Connolly v. Davidson*, 15 Minn. 519 (Gil. 428), 2 Am. Rep. 154; *Champion v. Bostwick*, 18 Wend. 175 [31 Am. Dec. 376]; *Wood v. Luscomb*, 23 Wis. 287. In *Railway Co. v. Shacklet*, 105 Ill. 364 [44 Am. Rep. 791], we said: 'Considering the question, then, in the light of public policy, we are of opinion a public interest will be best subserved by adhering strictly to the long and well-established principle that, where one has received an actionable injury at the hands of two or more wrongdoers, all, however numerous, are severally liable to him for the full amount of damages occasioned by such injury,' and the plaintiff in such case has his election to sue all jointly, or he may bring his separate action against each or any one of the wrongdoers."

We have no hesitancy in holding that the facts in the case bring the defendant within the test rule of Employ-

ers' Liability Act, correctly stated in plaintiff in error's brief.

Several of the alleged errors complained of in the petition in error have not been discussed or presented in the brief of plaintiff in error, and are therefore waived under the rules of this court.

The judgment of the district court is affirmed.

All the Justices concur, except SHARP, J., who dissents.